IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| MEGAN WHITTINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:21-cv-00066 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| THE SHENANDOAH COUNTY | ) | By:   Hon. Thomas T. Cullen |
| COMMONWEALTH OF VIRGINIA, | ) | United States District Judge |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

This is a sad case. Plaintiff Megan Whittington, who is proceeding *pro se*, alleges that her son, A.S.,[1] was removed from her custody without warning, a court hearing, or any constitutionally sufficient process, by the Shenandoah County Department of Social Services ("DSS") and its agents, including one of its former Family Services Specialists, Defendant Stephanie Cool-Danner. For her part, Cool-Danner asserts that DSS had no role in A.S.'s alleged removal from Whittington's custody. Rather, to avoid prolonged detention in a juvenile detention facility, Cool-Danner claims that Whittington agreed to—and the Juvenile and Domestic Relations ("JDR") court ordered—A.S.'s temporary placement in a more stable living situation following charges of truancy, assault and battery, and positive drug tests for marijuana.

This matter is before the court on Cool-Danner's December 29, 2021 motion to dismiss or, in the alternative, motion for summary judgment. Because the motion relies

---

[1] Because A.S. is a minor, the court refers to him by his initials to protect his privacy.

extensively on state court records that have been filed with the court under seal, as well as the sworn declaration of Cool-Danner, the court will treat the motion as one for summary judgment.

After Cool-Danner filed her motion, the court advised Whittington that she could "submit any further counter-affidavits or other relevant evidence contradicting, explaining, or avoiding Defendant's evidence." (*Roseboro* Notice, Dec. 30, 2021 [ECF No. 29].) Whittington filed a response on February 4, 2022 (ECF No. 39), and Cool-Danner filed a reply on February 11 (ECF No. 41). On March 2, Whittington filed another response to the motion. (ECF No. 43.) The court has reviewed the pleadings of the parties and the applicable law. Because oral argument would not aid the court in deciding the issues before it, oral argument was not ordered. The matter is now ripe for disposition.

## I.    BACKGROUND

Whittington claims that, on October 27, 2020, "Stephanie Cool-Danner . . . and her supervisor Heather Frost at [DSS] unlawfully removed [A.S.] from [her] home never filling [*sic*] a petition for the removal . . . ." (Compl. § III.C [ECF No. 2].) She further alleges that the JDR judge "allowed the removal never scheduling or requiring a hearing or created a court order to identify any information be gathered and reported never allowed rights to a fair trial violating procedural due process rights under The Fifth and Fourteenth Amendments Violating Constitutional and Fundamental Rights." (*Id.* [*sic* throughout].) She further alleges that the JDR judge retaliated against her and sentenced her to 15 days in jail on an unrelated issue. (*Id.*) But the JDR court records tell a much different story.

- 2 -

According to sealed JDR court records,[2] on February 20, 2020, a representative of the Shenandoah Public Schools filed a petition with the JDR court alleging that A.S. was in need of supervision because he was habitually absent from school without justification ("the truancy petition"). (Sealed Records Ex. 1.) On August 13, 2020, an officer of the Shenandoah County Sheriff's Office filed a petition with the JDR court alleging that A.S. had committed assault and battery on August 10 ("the assault petition"). (*Id.* Ex. 2.)

On September 22, 2020, a JDR judge held a hearing on the truancy petition. A.S. was present and represented by counsel, and court records indicate that Whittington was also present. (*Id.* Ex. 3.) The JDR "court heard evidence of no school performance via virtual education," and A.S. was drug tested; he was positive for marijuana. (*Id.*) The JDR judge entered a "Child in Need of Services Order," colloquially referred to as a "CHINS Order," finding that A.S. needed supervision because of his documented truancy. (*Id.*) The judge ordered that the Shenandoah County Public School was to evaluate A.S.'s service needs and report back to the court on or before October 27, 2020. (*Id.*) The court also ordered, among other conditions, that A.S. was to attend school. (*Id.*) At the same hearing, A.S. was arraigned on the assault petition, and that case was continued until October 27, the return date for the services evaluation. (*Id.*) The judge further ordered that A.S. be drug tested weekly and that, if he tested positive for illegal substances, "a show cause shall issue for failure to be of good behavior." (*Id.*)

---

[2] The records are sealed in this case as well. (*See* ECF No. 10-2.) They will be cited herein as "Sealed Records" and referred to by their exhibit number.

A.S. failed to comply with the court order. According to a petition filed by the Court Services Unit ("CSU"), although A.S. was scheduled for a drug test on October 9, he failed to appear. (*Id.* Ex. 4.) When probation went to the home, A.S. was allegedly "disrespectful and did not complete an oral drug screen which was offered to him." (*Id.*) The JDR court issued a capias for A.S. on October 14 for his failure to comply with the court's orders, and A.S. was arrested the next day and taken to the New River Valley Juvenile Detention Center. (*See id.* Ex. 5).

On October 16, A.S. was arraigned on the new charges; his mother and his attorney were present in court. (*Id.* Ex. 6.) The court found probable cause for the charges and ordered that A.S. be held pending trial. (*Id.*) That same day, Whittington was hand-delivered a notice to appear in JDR court on October 27 at 1:30 p.m.

At the October 27 hearing, the court found:

> Case is before the court where [A.S.] has previously been declared a CHIN-Supervision. There is a pending assault and battery charge, and a pretrial violation. The juvenile was supposed to be on house arrest, was making no educational progress, tested positive for illegal substances, had unapproved visitors in the residence, missed probation meeting, and officers had difficulty getting [Whittington] to respond.

(*Id.* Ex. 8.) The court ordered:

> Child was held pretrial. On the disposition date, mother tested positive for methamphetamine. The CHINS review order places DSS on notice, and this matter is set to 11/10/20 for disposition and further review. The child will continue to be held pretrial, but the court will accept a detention review motion or a detention review agreed order if endorsed by CSU and the [guardian *ad litem*] regarding a less restrictive placement option prior to our next hearing.

(*Id.*)

- 4 -

Shortly thereafter, on November 4, A.S.'s attorney, the Commonwealth Attorney, and the guardian *ad litem* presented an "Agreed Order . . . for Release to House Arrest," ordering that A.S. be "released to Cheryl and Vince Jimenez." (*Id.* Ex. 9.) A.S. was ordered to reside with the Jimenez family and could only visit with his mother if they supervised the visit. (*Id.*)

In October or November,[3] the court heard the merits of the charges against A.S. The court found sufficient facts to support the assault petition, and A.S. pled "no contest" to the violation of the JDR court's order. (*Id.* Ex. 10.) The court sentenced A.S. to 10 days in the juvenile detention center, with all 10 days suspended. A.S. was represented by counsel, but his mother, Whittington, was not present at the hearing. (*Id.*) Under Virginia Code Ann. "§ 16.1-278.8.A.13.c or § 16.1-278.4.6.e," DSS was notified that "the Court may order placement of the Defendant in DSS custody[.]" (*Id.*) This was the first time DSS became directly involved in A.S.'s case. (Decl. of Stephanie Cool-Danner ¶ 4, Dec. 28, 2021 [ECF No. 28-1].) The court further ordered that CSU monitor A.S.'s compliance with its order and that A.S. "temporarily" reside with Cheryl and Vince Jimenez. (Sealed Records Ex. 10.) Finally, the court referred A.S.'s case to a Family Assessment and Planning Team "for the preparation of a foster care prevention plan." (*Id.*) Whittington received a notice to appear at a hearing on December 3. (*Id.*)

On December 3, Whittington, A.S., A.S.'s attorney, and the guardian *ad litem* appeared in JDR court for a review of A.S.'s CHINS order. (*Id.* Ex. 11.) At that hearing, A.S. was ordered to attend school; to obey all reasonable and lawful commands of his mother and school

---

[3] The court order was signed October 27, but handwritten notes indicate that certain findings occurred on "11/10/20." (Sealed Records Ex. 10.)

officials; not to use or possess illegal substances; to submit to drug screens; and be of good behavior and not violate any federal, state, or local laws or ordinances. (*Id.*) A.S. and his mother were ordered to participate in Family Partnership meeting and any services recommended by DSS. (*Id.*) Finally, A.S. was permitted to "return home," but he remained on house arrest. (*Id.*)

On October 7, 2021, Whittington filed a *pro se* complaint and request for injunction in this court, alleging various causes of action against The Shenandoah County Commonwealth of Virginia; DSS; Cool-Danner; Heather Frost, a supervisor at DSS; and Shenandoah County JDR Court.[4] (ECF Nos. 2 & 5.) On December 29, 2021, Cool-Danner filed the present motion to dismiss or, in the alternative, motion for summary judgment. (Mot. to Dismiss, Dec. 29, 2021 [ECF No. 27].) With her motion, Cool-Danner filed a sworn declaration. (ECF No. 28-1.) The court issued a *Roseboro* notice to Whittington on December 30 (ECF No. 29), advising her of her obligation to respond with "any further counter-affidavits or other relevant evidence contradicting, explaining, or avoiding Defendant's evidence" (ECF No. 29). Whittington sought an extension to file a response to Cool-Danner's motion on January 14, 2021. (ECF No. 32.) The court granted that extension (ECF No. 35), and Whittington filed a response February 4. (ECF No. 39). Cool-Danner filed a reply on February 11 (ECF No. 41), and Whittington filed a second response on March 2 (ECF No. 43). Neither of Whittington's responses were accompanied by affidavits or other evidence.

---

[4] The court dismissed the claims against the JDR court and DSS on January 14, 2022. (Order, Jan. 14, 2022 [ECF No. 35].)

On April 7, Whittington filed a motion for leave to file an amended complaint to add two new defendants, both of whom are judges in Shenandoah County. (*See* Mot. for Leave at 1, Apr. 7, 2022 [ECF No. 46].)

## II.     <u>STANDARD OF REVIEW</u>

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557). If a party relies on evidence outside of the pleadings to support its motion, the court may convert the motion to dismiss to a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on

file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary

judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Anderson*, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

## III.   <u>ANALYSIS</u>

### A. **Cool-Danner's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 27)**

The gravamen of Whittington's complaint is the factually inaccurate claim that Cool-Danner and DSS ordered the removal of A.S. from her home. The record conclusively disproves this claim. Although Whittington disagrees with the facts, she has not presented any admissible evidence or testimony to raise a genuine dispute of material fact regarding what the court records plainly show. Accordingly, Cool-Danner is entitled to summary judgment.

Section 1983 creates a cause of action against anyone who, acting under the color of law, deprives another of any "rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a 'person acting under color of state law.'" *Hammons v. Univ. of Md. Med. Sys. Corp.*, 551 F. Supp. 3d 567, 580 (D. Md. 2021) (quoting *West v Atkins*, 487 U.S. 42, 48 (1988)). "A person acts under color of state law 'only when exercising power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 317–18 (1981)) .

Whittington appears to ground her claims in the Due Process Clause of the 14th Amendment, which provides that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law[.]" U.S. Const. amend. XIV, § 1. To rely on this constitutional provision, Whittington "must have a protectible interest." *See Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990). There is no doubt that Whittington has "a protectible liberty interest in the custody and care of [her] children." *See id.* But Whittington has failed to raise a genuine dispute as to whether a due process violation occurred.

Due process claims typically come in two varieties—procedural and substantive. The essential elements of a procedural due process claim are (1) a protectible interest, (2) of which the plaintiff was deprived by the defendant (3) without due process of law. *See Tri Cnty. Paving, Inc. v. Ashe Cnty.*, 281 F.3d 430, 436 (4th Cir. 2002). Once a protected interest is identified, due process "[a]t its elementary level . . . requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Richardson v. Town of Eastover*, 922 F.2d 1152, 1160 (4th Cir. 1991) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

As noted above, Whittington has shown a protectible interest. But, in this case, the facts are clear that Whittington's procedural due process rights were not violated. A.S. was taken into custody on the truancy and assault petitions after the petitions had been presented to the JDR judge, a neutral decisionmaker, who determined that probable cause existed for the charges. A.S. was released into the custody of Cheryl and Vince Jimenez *on the consent of the*

*parties.* (*See* Sealed Records Ex. 9.) Thus, any so-called "removal" of A.S. from Whittington's custody was by consent.

More specific to the present motion, though, Cool-Danner had *no role whatsoever* in the decision to place A.S. in the Jimenezes' home. His continued presence there as a condition of his pretrial release was both by consent and the JDR judge's orders. DSS—and specifically Cool-Danner—did not play any role in that decision. In short, Whittington's procedural due process claim against Cool-Danner is premised on a fundamental misunderstanding of undisputed facts, and Cool-Danner is entitled to summary judgment.

The same is true of any alleged substantive due process violations. To state a valid substantive due process claim, Whittington must show that she had a protectible interest, that the state deprived her of that interest, and "that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Tri Cnty. Paving*, 281 F.3d at 440 . As noted above, as it relates to Cool-Danner, Whittington has not come forward with any evidence to suggest, let alone create a genuine issue of material fact regarding whether, Cool-Danner played any role in the decision to place A.S. in the Jimenezes' care and custody. To the contrary, the record before this court establishes that A.S. was placed there on the consent of the parties before the JDR court. Insofar as Whittington makes a substantive due process claim against Cool-Danner, Cool-Danner is entitled to summary judgment on the record.

Because there is no allegation that Cool-Danner acted personally in the decision to place A.S. in the temporary care of another, and because the record establishes that the

processes employed were constitutionally adequate, Cool-Danner is entitled to summary judgment on all claims brought against her personally.

### B. Whittington's Motion for Leave to File Amended Complaint (ECF No. 46)

Whittington has also filed a motion for leave to file an amended complaint. "The new complaint maintains the counts and allegations against the same defendants from the original complaint, but accounts for the significant factual and procedural legal issues that have occurred since the original complaint was filed against each defendant listed on October 7, 2021. Through the Amended Complaint, Plaintiff seeks to add two new [d]efendants—one a [j]udge at The Shenandoah County JDR Court, Judge Chad Logan[,] and one a [j]udge at the Shenandoah County Circuit Court, Judge Kevin Black . . . ." (Mot. to Amend at 1, Apr. 7, 2022 [ECF No. 46].) Whittington alleges that Judges Logan and Black "abused their discretion causing [her] and her 16-year-old son to be unlawfully and forcibly separated without a warrant and absent exigent circumstances, including wrongful imprisonment." (*Id.*)

As a general matter, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The court will not accept Whittington's amended complaint for two reasons. First, as to its claims against Judges Logan and Black, her claims are futile. Second, adding additional

theories of recovery against dismissed parties based on subsequent events would seriously prejudice those defendants who have concluded their roles in this lawsuit.

Judges Logan and Black, although both state actors, may not be sued under § 1983 because they enjoy absolute immunity for actions taken in their roles as judges. *See Pierson v. Ray*, 386 U.S. 547, 553–54 (1967) (noting that absolute judicial immunity "applies even when the judge is accused of acting maliciously and corruptly, and it is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences" (internal quotation omitted)). Thus, Whittington cannot bring a § 1983 claim against these judges in this court, and her proposed amended complaint is futile for attempting to do so. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986) (noting that an amendment is futile if the "amendment is clearly insufficient or frivolous on its face").

As to her claims against other (mostly dismissed) defendants, adding new theories and facts that occurred *after* Whittington filed her original complaint would undoubtedly prejudice those parties. With the temporary exception of Shenandoah County, Virginia, and Heather Frost (*see infra* §§ III.C & III.D), all other entities have been dismissed from this action. Adding new facts and new theories once a party is dismissed—and rightfully believes that its involvement in this litigation has come to an end—works a prejudice that cannot be overcome by Whittington's threadbare (and, as discussed above, unsupported) allegations.

For these reasons, Whittington's motion for leave to amend will be denied.

### C. Claims Against The Shenandoah County Commonwealth of Virginia

Because Whittington is proceeding *pro se*, the court is empowered to dismiss a claim at any time if it determines that a plaintiff has "failed to state a claim upon which relief can be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). Under this review, the court finds that Whittington has failed to state a § 1983 claim against the county and will dismiss those claims against it.

It is well-settled that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Whittington's complaint is devoid of any allegation that an official custom or policy of the County was responsible for her alleged deprivations. Accordingly, she has failed to state a claim against the County, and her claims against it will be dismissed.

### D. Defendant Heather Frost

That leaves Heather Frost as the only remaining defendant in this action. Whittington filed this action on October 7, 2021. Under Federal Rule of Civil Procedure 4(m), she was required to serve Frost with a summons and a copy of the complaint "within 90 days after the complaint [was] filed . . . ." On November 19, an *unexecuted* return of service was filed with the court, indicating that Frost *had not been served*. (ECF No. 8.) Apparently, Frost was not at the address Plaintiff gave to the court, and "[n]o forwarding address was provided." (*Id.*)

Because Frost was not timely served in accordance with the applicable rules, the claims against her will be dismissed without prejudice. *See* Fed. R. Civ. P. 4(m).

- 14 -

**E. Whittington's Motion for a Preliminary Injunction (ECF No. 5)**

Preliminary injunctive relief is an extraordinary remedy that courts should apply sparingly. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991). As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by a "clear showing" that: (1) she is likely to succeed on the merits at trial; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20–22 (2008). The party seeking relief must show that the irreparable harm she faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd.*, 952 F.2d at 812. Without a showing that the plaintiff will suffer imminent, irreparable harm, the court cannot grant preliminary injunctive relief. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 360 (4th Cir. 1991).

Because Whittington's claims have all been dismissed, her request for preliminary injunctive relief is moot. Accordingly, her motion will be denied.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Cool-Danner's motion for summary judgment will be granted, Whittington's motion for leave to file an amended complaint will be denied, the claims against Shenandoah County, Virginia, will be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii), the claims against Heather Frost will be dismissed under Federal Rule of Civil Procedure 4(m), and Whittington's request for a preliminary injunction will be denied. The court is sympathetic

to Whittington's position, but her recourse if she is unhappy with the rulings of the state court are to utilize the procedures and appeals afforded to her in that forum.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 7th day of July, 2022.

_/s/ Thomas T. Cullen_
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE