UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF VIRGINIA

HARRISONBURG DIVISION

CLERK'S OFFICE U.S. DISTRICT. COURT
AT HARRISONBURG, VA
FILED

JUN 14 2024

LAURA A. AUSTIN, CLERK

BY: _____

DEPUTY CLERK

MEGAN WHITTINGTON, pro se,

ALIC STANLEY

V.

THE SHENANDOAH COUNTY

COMMONWEALTH OF VIRGINIA, et al.,

Defendants

Case No. 5:21-cv-00066

HONORABLE THOMAS T. CULLEN

## MOTION TO RECONSIDER

I, Megan Whittington, respectfully move this Court to reopen case 5:21-00066 based on compelling new evidence demonstrating statutory violations, procedural errors, and fraudulent actions by the Shenandoah County Commonwealth of Virginia and associated officials. This motion is filed pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, which allows the court to relieve a party from a final judgment for any reason that justifies relief, including extraordinary circumstances.

I respectfully submit this motion to reopen my case, which was unjustly dismissed on July 7, 2022. The dismissal was predicated on a series of deliberate misrepresentations and fraudulent actions perpetrated by the defendants, resulting in a profound miscarriage of justice. The re-examination of the facts underscores the necessity for judicial intervention to rectify these egregious wrongs and restore justice. This is an action to redress the deprivation of civil rights under color of state law, arising from the Defendants' actions that violated the Plaintiffs' due process rights guaranteed by the Fourteenth Amendment to the United States Constitution. The Shenandoah County Juvenile Court misrepresented my son, Alec Stanley, as a Child in Need of Supervision (CHINS) in blatant violation of Virginia statutory provisions and constitutional due process rights.

## EXTRAORDINARY CIRCUMSTANCES

**Systematic Misrepresentation and Fraud:** The new evidence demonstrates that the Defendants engaged in systematic misrepresentation and fraud, fundamentally undermining the integrity of the judicial process. This level of deceit constitutes extraordinary circumstances warranting relief under Rule 60(b)(6).

**Violation of Constitutional Rights:** The procedural errors and lack of due process in classifying my son as a CHINS without proper adjudication represent a grave violation of constitutional rights. The protection of due process is a cornerstone of the American legal system, and its blatant disregard in this case exemplifies extraordinary circumstances.

**Profound Miscarriage of Justice:** The wrongful classification and subsequent actions taken against my family and me have resulted in a profound miscarriage of justice. The deprivation of my son's liberty and the undue stress inflicted on our family constitute harm that goes beyond ordinary legal error, rising to the level of extraordinary circumstances.

**Impact on My Family:** The unwarranted intervention by SCDSS has had a severe and lasting impact on my family, including emotional distress, reputational damage, and financial hardship. The consequences of the Defendants' actions extend far beyond typical legal disputes, underscoring the extraordinary nature of the situation.

The deliberate exploitation of Virginia Code § 16.1-241(A1) created a climate of intimidation and coercion, ruthlessly dismantling my parental rights. This statute, intended to protect children from genuine neglect or harm, was twisted to exert undue control over my family.

The profound injustice perpetrated by the Shenandoah County Commonwealth through the systematic exploitation of Virginia Code § 16.1-241(A1) and the CHINS child welfare system the Commonwealth orchestrated a sham legal process that undermine fairness and impartiality.

The actions taken by the Shenandoah County Commonwealth represent egregious violations of our fundamental rights, specifically the right to be free from unwarranted   intrusion and the right to familial autonomy. The Shenandoah County Juvenile Court's blatant misrepresentation of my son, Alic Stanley, as a Child in Need of Supervision (CHINS) flagrantly violated Virginia statutory provisions and constitutional due process                   .

The Shenandoah County Commonwealth of Virginia et. al, misrepresented my son, Alic Stanley, as a Child in Need of Supervision (CHINS), in blatant violation of Virginia statutory provisions and constitutional due process rights.

We were subjected to continuous malicious prosecution for over twelve months in the Shenandoah County Commonwealth of Virginia, without any lawful basis. This disrupted the sanctity of our family and resulted in the traumatic, unlawful removal of Alic from my custody without notice and without due process. Such actions grossly disregarded Alic's best interests and my parental autonomy and destabilized my family.

As a mother, my fundamental right to care for my child was callously dismantled while we were unjustly stripped of our rights, freedoms and liberties. The actions of the Commonwealth of Virginia and Shenandoah County amounted to a systematic dismantling of constitutional safeguards through intentional misrepresentation, exposing egregious legal malpractice under the color of state law.

The cumulative effect of the defendants' actions, characterized by a systemic abuse of Virginia Code § 16.1-241(A1) provided an unfair advantage to the state and left me unaware and powerless to protect my son as we were recklessly subjected to the traumatic legal malpractice of the Child Welfare system in the Commonwealth of Virginia and continues to profoundly affect my family constitutes an abuse of power as established in Ex parte Young, 209 U.S. 123, 159 (1908). The local government's actions, include the unlawful removal of Alic from parental custody based on a false CHINS classification, violate federal and state laws protecting parental rights. This deliberate misrepresentation of Alic's legal status violated procedural due process and constitutes compelling grounds for relief based on fraud.

The evidence is overwhelming and indisputable: Alic Stanley was never lawfully adjudicated as a CHINS. The actions taken by Amanda Kibler and the subsequent acceptance by the Shenandoah County Juvenile Court were based on false allegations, procedural violations, and a complete disregard for due process. These actions constitute malicious prosecution and an abuse of judicial power. The Juvenile Court's actions, amounted to an unreasonable seizure of personal liberty, were in direct violation of the Fourth Amendment

The fraudulent testimony and defamatory classification directly impacted the initial judgment, causing the District Court to dismiss the case without full knowledge of the misrepresentation. This evidence was deliberately concealed by the defendants. The deliberate misrepresentation and exploitation of my limited legal understanding expose the fraudulent behavior, and the obstruction of justice as described in United States v. Aguilar (1995) and perjury under United States v. Dunnigan (1993).

The fraudulent misrepresentation is not just a personal issue—it reflects a systemic problem within the Shenandoah County judicial and child welfare system. The cumulative impact of these systemic failures, fraud, and misrepresentation represents extraordinary circumstances that justify relief under Rule 60(b)(6).

The lack of proper legal justification for these actions caused me to fear for our safety and well-being, prompting me to file numerous complaints with various Virginia state officials against the defendants involved.

The rapid sequence of events left me powerless to fully comprehend and react to their actions, compelling numerous complaints to Virginia state officials against the defendants involved. Little did I know that my efforts to seek protection against the responsible parties were futile due to the juvenile court's concealed assertion of jurisdiction and the defamatory misrepresentation of my son as a child in need of supervision leaving State officials also deceived by the juvenile court's unlawful jurisdiction asserted through the abuse of Virginia Code § 16.1-241(A1) a fabricated pretext for control over us leaving my efforts to file complaints against the responsible parties futile due to the juvenile courts false assertion of jurisdiction and my lack of awareness to the extent of the deceptive practices.

Compelled by a desperate need to shield my family from further harm, I sought refuge in the federal court system I made a desperate plea for protection in a complaint filed with the United States Court for the Western District of Virginia on October 7, 2021. I was unaware of the extent of procedural misconduct that had occurred, and this action unwittingly exposed us to further exploitation through the juvenile court's false assertion of jurisdiction without my knowledge.

The defendants, seized upon my lack of legal expertise, manipulated the situation further, and their misconduct extended into the proceedings of the Western District of Virginia, compromising our ability to seek justice and protection by misrepresenting Alic as a CHINS through the Western District of Virginia. This strategic misrepresentation was not just a betrayal of trust but a deliberate attempt to obscure their actions from the beginning and manipulate the legal framework to their advantage.

The Shenandoah County Juvenile Court's actions not only deceived me but also state and federal officials. By omitting crucial information and misrepresenting jurisdictional boundaries, the court egregiously deprived us of our constitutional rights and the right to a fair trial, resulting in significant miscarriages of justice.

Alic and I have suffered prolonged injustices due to the gross misrepresentation executed without my knowledge.

The contrived narrative presented by the defendants depicted Alic as a habitual truant and unjustly branded me, his mother, as an unfit parent. This narrative was not only slanderous and defamatory but also executed without my knowledge in a blatant attempt to manipulate the legal system. The deliberate misrepresentation of my son, Alic Stanley, and my character, constitute defamation and a gross abuse of power, violating our Fifth and Fourteenth Amendment rights to due process and equal protection. The contrived narrative, built on false and misleading information. These actions are in violation of Virginia Code § 8.01-45, addresses defamation.

The covert nature of these actions highlights a significant miscarriage of justice, where the state's unilateral decisions were executed without my knowledge, involvement or consent, dismantled my ability to make crucial decisions regarding my child's welfare, education, and upbringing. The very fabric of my parental existence was ravaged, leaving my fundamental rights to make decisions about my child's welfare in shreds, my autonomy a parent was shattered, my confidence and authority as a guardian were systematically dismantled, and I was callously abandoned to navigate a system so bereft of trust, transparency, and accountability that it has left an indelible stain on the notion of justice.

The actions of the Shenandoah County Commonwealth devastated the sacred bond between my child and me, transforming our once peaceful and nurturing environment into a perpetual battleground. This situation has created an atmosphere of tension and anxiety, caused widespread emotional turmoil and irreparably damaged the trust, harmony, and affection that once defined our relationship.

The defendants operate with impunity, devoid of accountability or transparency, and directly harmed our family and many others throughout Shenandoah County.

The defendants' testimonies are replete with deceit, dishonesty, and bad faith, and constitute a prima facie case of procedural fraud of the highest order, warranting the immediate reopening of this case to rectify the grave injustices that has been perpetrated against us.

The case at hand calls not for mere scrutiny but for immediate and decisive action to rectify these grave injustices. It underscores the imperative need for reform within the Shenandoah County judicial system to realign it with our constitutional values and principles, ensuring justice, fairness, and impartiality for all.

The profound injustice of this situation, rooted in a flagrant abuse of power and a cavalier disregard for the principles of justice and due process, underscores the urgent need for accountability, transparency, and reform within Shenandoah County's judicial and child welfare system.

The defendants systematically manipulated facts and events, making me question my reality and perceptions. This includes denying events that I knew had occurred and twisting the truth to portray me as unreasonable and unstable. The relentless barrage of falsehoods left me isolated, anxious, and unable to trust my own judgments, inflicting significant harm on my mental well-being. The continuous threats, false accusations, and legal manipulations created an environment of fear and uncertainty, designed to undermine my confidence and sense of reality The deliberate misrepresentation of facts and manipulation of legal proceedings inflicted significant psychological distress on me, akin to the abuse of power condemned in Rochin v. California, 342 U.S. 165 (1952).

The petition, filed by an attendance official without proper authority, led to an improper assertion of jurisdiction by the juvenile court. This unauthorized action flagrantly violated Virginia statutory law and the defendants' narrative maliciously and falsely depicted my son, Alic, as a habitual truant and slanderously branded me as an unfit parent. This defamatory action was executed without my knowledge, representing a calculated manipulation of the legal system. This left me blindsided, distressed, and completely unaware of the defamatory misrepresentation of my son. The defendants' tortious intrusion, manifested as a coordinated ambush of relentless prosecution based on unfounded allegations, left me stunned and disoriented without full knowledge of the misrepresentation and procedural misconduct that occurred. The Supreme Court has emphasized the importance of evidence-based decision-making in juvenile proceedings. In In re Winship, 397 U.S. 358 (1970), the Court held that the standard of proof in juvenile delinquency proceedings is "beyond a reasonable doubt." The deprivation of our due process and equal protection rights, along with the denial of a fair trial, constitutes a fundamental breach of constitutional protections.

THE defendants rested their assertion that Alic's CHINS status was based on truancy and that it was documented, without providing evidence of willful violations of compulsory attendance, or documented truancy as there was none. The assertion of documented truancy in the absence of any procedural history involving Alic with the juvenile court was baseless and deceitful and the Juvenile Court fabricated a CHINS adjudication sheet to fit their false narrative in the absence of any procedural history involving Alic with the juvenile court

Adding insult to injury, the defendants then filed a motion to seal juvenile court records. I was unaware that it was even possible to seal a juvenile court record that did not exist. A rare legal anomaly that demands challenged

Fraud upon the Court: The sealing of records that were created based on fraudulent and fabricated charges constitutes a fraud upon the court, as defined in Bullock v. United States (1983). This action further demonstrates the need for judicial review and correction of the profound injustices inflicted. Bullock v. United States, 763 F.2d 1115 (10th Cir. 1983): Defines fraud upon the court and the necessity of transparency in judicial processes.

The defendants filed a motion to seal juvenile court records based on fraudulent grounds, obstructing justice and preventing transparency. Sealing of Records: The improper sealing of records based on false pretenses was a calculated attempt to shield wrongful conduct from judicial scrutiny. This action obstructed justice by impeding our ability to challenge baseless assertions and access critical information.

Sealing records that do not exist or were based on false pretenses is improper and lacks any legal justification. This action further demonstrates the lengths to which the defendants have gone to cover up their unlawful actions and deny me and my son our rights to due process and fair treatment. Improper sealing of records based on fraudulent grounds, obstruction of justice. The fraudulent actions and defamatory statements directly impacted the initial judgment, causing the District Court to dismiss the case without full knowledge of the misrepresentation. This evidence was deliberately concealed by the defendants.

Operating under the Shenandoah County Commonwealth of Virginia, the defendants orchestrated falsehoods and deceptive practices, akin to 'fraud upon the court' as defined in Bullock v. United States (1983) The defendants' act of filing a motion to seal Alic's non-existent records requires judicial scrutiny under principles established in County of Sacramento v. Lewis and 42 U.S.C. § 1983 for actions that "shock the conscience." In Gonzalez, the court recognized that when multiple actors within an institution conspire to violate constitutional rights, it constitutes a significant breach of those rights. The actions taken were driven by malice and improper purpose, lacking probable cause. Gonzalez v. Ysleta Independent School District, 996 F.2d 745 (5th Cir. 1993) The malicious intent and lack of probable cause in pursuing charges against Alic align with the issues addressed in Gonzalez v. Ysleta Independent School District. This malicious prosecution was driven by malice and lacked probable cause. Gonzalez v. Ysleta Independent School District, 996 F.2d 745 (5th Cir. 1993), supporting a claim of malicious prosecution. This

case condemned conspiracies to violate constitutional rights. These factors collectively justify extraordinary circumstances.

Furthermore, Judge Logan's actions constitute an impermissible exercise of legislative power, subverting the constitutional scheme of governance. By unilaterally asserting jurisdiction over Alic, Judge Logan effectively usurped the role of the legislature, legislating from the bench, and undermining the constitutional principle of separation of powers.

Due process, firmly rooted in the Fourth Amendment, acts as a safeguard against unjustified government encroachments, including improper judicial actions. It unequivocally prohibits unreasonable seizures, protecting citizens from the perils of unchecked state power and ensuring that governmental actions remain constitutionally bound. This protection is essential to maintaining individual autonomy and preventing arbitrary and capricious assertions of jurisdiction which is exactly what occurred in our situation.

In August 2020, my son Alic Stanley, a 16-year-old high school junior planning to graduate early in March 2021 (which he successfully achieved), was unjustly pursued by the juvenile justice system. We received a defamatory petition falsely alleging that Alic was a truant also the fraudulent classification of my son was concealed within the petition alleging truancy as a Child in Need of Supervision (CHINS) falsely asserted compliance with Virginia Code § 16.1-241(A1). Additionally, the alleged truancy was unsupported by any procedural history or documentation involving Alic, indicating the baseless and deceitful nature of the classification. The petition dated February 26, 2020, by Amanda Kibler to classify Alec Cole Stanley as a Child in Need of Supervision (CHINS) was rife with procedural and statutory violations. This created an ambush situation; a clear obstruction of justice designed to disadvantage us and prevent a fair hearing. Kibler's actions were driven by malice and devoid of any factual basis, as evidenced by her false allegations that maliciously interfered with our familial relationship—a protected interest

**Legal Requirement:** Under Virginia Code § 16.1-227 a child cannot be designated as a CHINS without clear and convincing evidence of willful and habitual absenteeism from school. In Virginia, the relevant law for classifying a child as a Child in Need of Supervision (CHINS) is found in the Virginia Code § 16.1-228. According to the code, a child cannot be classified as a CHINS based solely on truancy; additional of a serious threat to the child's well-being or safety is required. Additionally, such a classification requires an adjudicatory hearing to establish jurisdiction properly

Amanda Kibler, as attendance official, filed the petition unilaterally without necessary judicial oversight or authorization. Stanley v. Fairfax County DSS, 405 S.E.2d 621 (Va. 1991), highlighted the necessity of proper authority and evidence in filing such petitions. Alic was not ever subjected to prior court proceedings and had not been found as truant nor CHINS. The unilateral nature of this filing, as evidenced by the petition document, demonstrates an overreach

of her authority and violated the procedural requirements set forth by Virginia law and emphasized in Stanley v. Fairfax County DSS.

Kibler's actions exceeded her statutory authority, lacking judicial authorization or oversight, which is required for such serious legal actions. The petition lacks procedural foundation, such as a preliminary investigation and an adjudicatory hearing. Alec was denied fundamental procedural rights, including notice, a fair hearing, and the opportunity to challenge the evidence against him. In re Gault, 387 U.S. 1 (1967), mandates that juveniles are entitled to procedural protections in court proceedings. The denial of these rights in Alec's case is a clear violation of procedural due process.

The lack of a proper jurisdictional basis in Alec's case violated his constitutional rights. The absence of any procedural history or documentation supporting the allegations of truancy further highlights the fraudulent nature of the classification. Lynchburg Div. of Social Services v. Cook, 648 SE 2d 328, 50 Va. App. 218 (Va: Court of Appeals, 2007): Emphasizes the necessity of transparency and fairness in judicial processes.

The petition cites Virginia Code § 16.1-241(A1), claiming Alec was habitually and without justification absent from school. However, it fails to provide the necessary clear and convincing evidence to substantiate this claim. The requirement for clear and convincing evidence is critical, as established in Santosky v. Kramer, 455 U.S. 745 (1982). The absence of such evidence in the petition renders the CHINS classification procedurally and substantively defective. Without any prior court involvement, preliminary investigation, or substantiated evidence, the juvenile court's assertion of jurisdiction over Alec was erroneous. Breed v. Jones, 421 U.S. 519 (1975), established that a juvenile's due process rights are violated when a court asserts jurisdiction without sufficient evidence.

Williams v. Williams, 501 SE 2d 417 (Va. 1998), addressed the jurisdictional authority and necessity of proper procedures, demonstrating a severe procedural violation. Santosky v. Kramer, 455 U.S. 745 (1982) *Williams v. Williams*, 501 SE 2d 417, 256 Va. 19 (Va: Supreme Court, 1998). This alone justifies overturning the court's decisions.

Troxel v. Granville, 530 U.S. 57 (2000): Recognizes the fundamental rights of parents to make decisions concerning the care, custody, and control of their children.

County of Sacramento v. Lewis, 523 U.S. 833 (1998): Establishes the principle that actions which "shock the conscience" warrant judicial scrutiny and redress. The deliberate misrepresentation and fraudulent actions by the defendants, including the manipulation of petition dates, false classification of CHINS, failure to conduct a fair adjudicatory hearing, violation of parental rights, and improper sealing of records, resulted in a profound miscarriage of justice. These egregious violations necessitate the reopening of the case and judicial intervention to correct the injustices inflicted upon my family.

The facts of our case are unequivocal and readily verifiable, and they clearly demonstrate blatant violations of our due process and equal protection rights. Notably, prior to the following events, neither I, Megan Whittington, nor my son Alic Stanley, who was just 16 years old, at the time had any involvement with the Juvenile Court. This lack of prior involvement underscores the arbitrary and capricious nature of the "Child in Need of Supervision" (CHINS) designation.

As a single mother, I consistently provided a stable and loving environment for my children, who are the center of my existence. This unblemished record of responsible parenting is a testament to my fitness as a parent, making the CHINS designation all the more egregious. Furthermore, the absence of any custody disputes following the death of my son's father in 2008 meant that we had no interaction with the juvenile court or the department of social services.

The sudden and unsubstantiated initiation of legal proceedings against Alic, without any prior procedural history, constitutes a blatant violation of his fundamental right to the presumption of innocence. The authorities, driven by ulterior motives, manipulated the legal system to undermine Alic's presumption of innocence, a sacrosanct principle that underpins the juvenile justice system.

The presumption of innocence, enshrined in the 14th Amendment to the US Constitution, is a cornerstone of American criminal jurisprudence and mandates that an individual is presumed innocent until proven guilty beyond a reasonable doubt. In the context of juvenile proceedings, this presumption is particularly crucial, as it safeguards the rights and dignity of minors.

Actions were taken without notifying or involving me, resulting in decisions being made without my knowledge or consent. Such actions are a direct violation of my parental rights and due process protections violated Virginia Code § 16.1-263 and due process protections established in In re Gault (1967) and Goss v. Lopez (1975). The exclusion of parental involvement prevented any opportunity to challenge the accusations or present a defense, fundamentally undermining the fairness of the proceedings. The right to parental involvement is critical in ensuring due process and protecting family integrity. These actions are contrary to established legal standards, such as those in In re Winship and Santosky v. Kramer.

No adjudicatory hearing was conducted to lawfully adjudicate Alic as CHINS, violating Virginia Code § 16.1-241 and § 16.1-263.The absence of an adjudicatory hearing is a fundamental violation of due process rights as established in In re Gault, 387 U.S. 1 (1967). This is a clear denial of procedural due process, as established in In re Gault, 387 U.S. 1 (1967). established the necessity of due process in juvenile proceedings, including the right to a fair hearing. The absence of an adjudicatory hearing in Alic's case is a direct violation of these established due process rights. The defendants proceeded without conducting an adjudicatory hearing, violating Virginia Code § 16.1-241 and due process standards. This deprived us of the opportunity to challenge the allegations, present evidence, and defend against the false charges and present our defense. Goss v. Lopez, 419 U.S. 565 (1975), and Mathews v. Eldridge, 424 U.S. 319 (1976), individuals must be given notice and a hearing before being deprived of their liberty interests. .

The Shenandoah County Juvenile Court did not have the legal authority to assert jurisdiction over Alic, as there was no prior court involvement, preliminary investigation, or valid legal foundation for its assertion of jurisdiction.

The disregard for the 'beyond a reasonable doubt' standard, critical in juvenile proceedings as established in *In re Winship*, and the failure to meet the 'clear and convincing evidence' threshold mandated by *Santosky v. Kramer* (1982), significantly eroded our constitutional rights, bypassed necessary procedural safeguards, and resulted in an unjust deprivation of my parental rights. The collusion and manipulation to deprive Alic and me of our rights align with the principles outlined in *Gonzalez v. Ysleta Independent School District*, where conspiracies to violate constitutional rights were condemned.

In the unlawful exercise of its jurisdiction on September 22, 2020, we faced ambush proceedings in Shenandoah County Juvenile Court's actions were taken without proper evidence or legal basis. Judge Logan's imposition of house arrest, court ordered weekly drug screens, court monitoring, even appointing a guardian ad litem without legal basis or probable cause grossly deprived me of my parental rights and flagrantly infringed upon Alic's liberty interests and restricted our freedom protected by the Fourth Amendment without due process or a legal basis violated the Eighth Amendment protection from cruel and unusual punishment. The actions of Judge Logan lack legal justification, violated both substantive and procedural due process and parental rights and constitute an abuse of judicial discretion and were implemented without adherence to procedural fairness, amounting to malicious prosecution effectively coerced Alic into submitting to oppressive measures, violating his substantive due process rights under the Fourteenth Amendment.

This unlawful exercise of jurisdiction flouted the principle that jurisdiction must be grounded on credible evidence and strict adherence to established legal standards render any decisions made by the juvenile court regarding Alic's case ineffective and void. The actions of the Shenandoah County Commonwealth of Virginia directly led to the violations of our rights protected under 42 U.S.C. § 1983.

Legal actions must be based on actual violations supported by evidence, ensuring that the actions taken are fair and reasonable, and that judicial processes are not abused." The Fifth Amendment to the United States Constitution serves as a bulwark against arbitrary government actions, ensuring that individuals are afforded due process. Breed v. Jones, 421 U.S. 519 (1975) the Supreme Court held that a juvenile's due process rights are violated when a court asserts jurisdiction without sufficient evidence. The Court ruled that a juvenile has a constitutional right to a hearing on the issues of jurisdiction and merits. The Juvenile Court's assertion of jurisdiction in this case was erroneous and violated our due process rights and fundamental fairness. The fraudulent actions and malicious prosecution inflicted significant psychological distress on both Alic and me, creating an environment of fear and anxiety

Any action leading to substantive changes in a child's status or parental rights must be underpinned by clear and convincing evidence. In our case, no evidence was presented, and we were denied fundamental procedural rights, such as a fair hearing and the opportunity to challenge the evidence. No established legal procedure was followed. The precipitous classification of Alic as a CHINS without notice, hearing, or legal justification effectively denied us the fundamental due process guarantees enshrined in the Fifth and Fourteenth Amendments. This arbitrary process contravened the Supreme Court's holdings in Mathews v. Eldridge and Goss v. Lopez. The state's actions in this case constitute a tortious interference with my fundamental right to the care, custody, and control of my son, Alic. The Supreme Court has long recognized this right as "perhaps the oldest of the fundamental liberty interests" protected by the Due Process Clause of the Fourteenth Amendment. Troxel v. Granville, 530 U.S. 57, 65 (2000).

By imposing punitive measures without a legitimate legal basis, Judge Logan usurped the role of the legislative branch, which is responsible for defining criminal offenses and penalties. The Supreme Court in Ingraham v. Wright underscored the importance of constitutional protections against excessive punishment in educational settings, emphasizing due process rights under the Fourteenth Amendment. The actions of the Shenandoah County Juvenile Court violated fundamental principles of due process, including the right to liberty and the prohibition on arbitrary seizures, as established in Whren v. United States and Stanley v. Illinois. The Shenandoah County Juvenile Court's actions constitute an abuse of judicial power, analogous to the judicial excesses addressed in Marbury v. Madison, and constitute a a prima facie violation of our due process rights. under 42 U.S.C. § 1983.

In the unlawful exercise of its jurisdiction, three weeks after our initial court hearing Judge Logan and probation officer Matt Leroux manufactured and issued an arbitrary arrest warrant alleging that Alic violated a court order. The court order that Alic was alleged to have violated is the very one that judge logan had arbitrarily placed him under just weeks prior on September 22, 2020.

On October 15, 2020, Alec was suddenly arrested by Shenandoah County Sheriff's deputies without prior notice or justifiable cause, violating his Fourth Amendment rights against unreasonable searches and seizures and his Eighth Amendment protection from cruel and unusual punishment. Alec's wrongful detention lasted 23 days, causing severe trauma.

The wrongful detention and relentless prosecution have left lasting emotional scars, highlighting the need for judicial redress. Goss v. Lopez, 419 U.S. 565 (1975): Emphasizes the importance of due process in disciplinary actions, extending to parental rights in juvenile proceedings.

This false charge of violating a court order served to fabricate Alic's legal status as a child in need of supervision as evidenced by the falsified CHINS adjudication sheet that the manufactured charge of violating a court order was scribbled onto at that time exposing judicial and prosecutorial misconduct.

**Supporting Evidence:**

CHINS adjudication sheet with false charges of violating a court order.

Internal communications indicating arbitrary issuance of the warrant.

The following day, on October 16, 2020, the defendants fabricated a charge of assault against Alic and refused to release him from detention, unlawfully imprisoning a juvenile for 23 days also violated the Sixth Amendment's guarantee of a fair trial. Bell v. Wolfish, 441 U.S. 520 (1979). Alic was unjustly denied release from juvenile detention and new court hearing rescheduled for October 27, 2020, prolonging our mental and emotional distress and the subsequent unlawful and forceful removal occurred. This experience was akin to an abduction and caused severe trauma.

This false charge also served to fabricate legal status as a child in need of supervision as evidenced by the falsified CHINS adjudication sheet that the manufactured charge of assault was also scribbled onto at that time.

The fabricated assault charge against Alic, was dated August 10, 2020, was not introduced until October 16, 2020, and lacks the clerk of court's seal, this was submitted by defendants to be used as evidence against us.

The clarity provided by the official 911 transcript dated August 10, 2020 is undeniable. It unequivocally shows that the 911 call, initiated by Ethan Whittington, was merely a result of a verbal disagreement and nothing more. This revelation is critical and exposes the groundlessness of the charges brought against Alic, a charge that we can now prove was entirely false. This transcript absolves Alic Stanley from the wrongful accusations made on October 16, 2020,

The traumatic and illicit removal of Alic from my custody, carried out through intimidation, threats, and the fabrication of charges, was a flagrant violation of my constitutional rights. The Supreme Court has held that the forcible removal of a child from a parent's home, without a court order or exigent circumstances, amounts to an unconstitutional "seizure" under the Fourth Amendment. (See Tenenbaum v. Williams, 193 F.3d 581, 600 (2d Cir. 1999).

Stephanie Danner's baseless assertion of Alic's involvement in an assault and subsequent accusations of truancy without evidence further exemplify gaslighting. Officials consistently presented false testimony, withheld exculpatory evidence, and created fictitious records to support their claims. The coordinated efforts of these officials to mislead and deceive the court reflect a deeply ingrained culture of corruption and abuse of power that must be addressed.

Stephanie Danner, Heather Frost, and the Shenandoah County Department of Social Services (SCDSS) actively participated in this conspiracy in collusion with the Juvenile Court, alleging Alic was a child in need of supervision and truant to justify his unlawful removal from our home. This constitutes a flagrant breach of substantive due process rights and a violation of constitutional protections.

The defendants falsely claimed that I consented to Alic's unlawful removal. This assertion not only defies logic, it was a gross form of torture and also an act of perjury. Danner's false denials are considered perjury, particularly since made under oath and in official documents.

Stephanie Danner's false testimony and intentional misrepresentation of the facts contributed to a significant miscarriage of justice. Her actions disregarded the best interests of my son, Alic, and demonstrated a blatant disregard for the state's responsibility to protect child welfare.

As established in DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), when the state intervenes in a family's life, it must ensure that its actions do not create or exacerbate harm. Yet, that is precisely what happened in my case. The state's intrusion into Alic's life, culminating in his unlawful removal from my custody, clearly falls under the state-created danger doctrine. In my case, the Shenandoah County Juvenile Court's reckless decisions exposed Alic to undue harm, proving that the state not only failed to protect him, but actively contributed to the danger caused by its own actions. The defendants' conduct exhibited a blatant disregard for the safety and welfare of my son. Their actions were negligent and reckless, that created a perilous environment that continues to pose a direct threat to our family's security. The defendants deprived us of our constitutional right to due process by continuously manipulating the legal system to their advantage, including the false assertion of jurisdiction by the juvenile court.

Stephanie Danner and Heather Frost resorted to threats of violating a false court order to intimidate me and facilitate the alienation of me from my son. This coercive tactic underscores their intent to manipulate and control the situation to their advantage, regardless of the harm inflicted upon me and my family. abused their positions within the Shenandoah County Department of Social Services to target and victimize me. By leveraging their authority, they subjected me to unwarranted legal proceedings and false imprisonment, demonstrating a clear abuse of power for personal or ulterior motives.

The official transcript from November 4, 2020, as evidenced by Larry Mayer's communication, clearly shows my objections to Judge Logan's decisions and my intent to contest the Juvenile Court's actions. Despite this, Stephanie Danner, along with other defendants, manipulated the situation and falsely asserted my consent to the District Court.

The unlawful removal of Alic without evidence of abuse or neglect, violated substantive due process rights protected under the Fourteenth Amendment and reinforced in cases like Santosky v. Kramer, 455 U.S. 745 (1982) this was an incredibly disorienting and distressing experience. The unwarranted separation of Alic from me contravenes the constitutional right to family integrity, as recognized in Troxel v. Granville, 530 U.S. 57 (2000).

The manufactured charges against me, orchestrated by Stephanie Danner and Heather Frost of the Shenandoah County Department of Social Services, and defended by Jeremy McLeary, Mayor of Woodstock, Virginia, who holds dual roles as both Mayor and defense representative

for the Department of Social Services, epitomize the defendants' deceitful intentions and malicious conduct. As the Mayor of Woodstock, McLeary holds a position of public trust and responsibility to serve the interests of the community.

The absence of any home visit or assessment highlights the arbitrary and unjust nature of this decision. Furthermore, the deliberate estrangement of me from my son, facilitated by threats of violating a false court order, constitutes a reprehensible abuse of power. The ensuing 34 days of false imprisonment, devoid of a fair trial or competent legal counsel, serve as a stark reminder of the defendants' blatant disregard for my constitutional rights.

The intentional acts of parental alienation by state actors infringed upon my First Amendment rights to freely associate with my son. This alienation was executed through coercive tactics, including threats and false labeling. The wrongful removal of Alic and the infringement of my fundamental parental rights are significant federal transgressions that necessitate federal intervention. Stephanie Danner's denial of early involvement and calculated abuse of power amount to a substantive violation of due process. Furthermore, the defendants' actions constituted a clear violation of the First Amendment, as their coercive tactics infringed upon my right to freely associate with my son.

This phenomenon is particularly egregious in the context of a child welfare case, where the stakes are high and the consequences of error have been devastating. Stephanie Danner and the immediate initiation of a FAPT case without proper legal grounds or exigent circumstances constitutes a Fourth Amendment violation, as underscored in Calabretta v. Floyd. The potential financial incentives behind the wrongful CHINS and foster care placements involving Alic Stanley warrant an investigation under the Racketeer Influenced and Corrupt Organizations Act (RICO).

### Supporting Evidence

Correspondence from Danner and FSS records showing involvement.

The correspondence from Stephanie Danner the Family Services Specialist (FSS) records there are repeated false denials of involvement in the case concerning my son, Alic. These denials, when juxtaposed with documented evidence, expose a pattern of deceit and manipulation aimed at justifying their actions and concealing procedural misconduct.

Stephanie Danner's false testimony and intentional misrepresentation of the facts contributed to a significant miscarriage of justice.

Danner's denial of involvement in the unlawful removal of Alic on October 27, 2020, proven false by transcripts, dated October 27, 2020, as well as other documents demonstrates her involvement and calculated abuse of power amount to a substantive violation of due process. This phenomenon is particularly egregious in the context of a child welfare case, where the stakes are high and the consequences of misconduct have been devastating.

Communication from Larry Mayer indicating my attempt to appeal the juvenile court, the transcript from November 4, 2020, while Alic was unlawfully imprisoned the showing of objections in communication directly to Stephanie Danner from Larry Mayer indicating my attempt to appeal the juvenile court. However, this request went ignored and Alic remained in juvenile detention unlawfully until November 10, 2020.

The correspondence from Stephanie Danner the Family Services Specialist (FSS) records repeated false denials of involvement in the case concerning my son, Alic. These denials, when juxtaposed with documented evidence, expose a pattern of deceit and manipulation aimed at justifying their actions and concealing procedural misconduct.

Email from Danner to Megan Whittington (January 18, 2021):Danner states: "I have never had any involvement in the proceedings concerning your son."

**Evidence Contradiction:** Internal notes and other correspondence from Shenandoah County officials, including those involving Danner, reveal her active 'participation in the case, including making recommendations for Alic's supervision and placement's

**FSS Case Notes (Various Dates):** Notes by FSS indicate multiple instances where Danner was involved in meetings and decisions about Alic's case.

**Example:** A case note dated November 30, 2020, details Danner's direct involvement in discussing Alic's school attendance and behavior with other officials. Email Correspondence with Amanda Kibler (January 19, 2021):

Danner falsely claims, "I have no knowledge of any CHINS petition filed against Alic."

**Evidence Contradiction:** Documents reveal that Danner not only had knowledge but also communicated with Kibler regarding the CHINS petition and subsequent actions taken against Alic.

**Internal Notes from Shenandoah County Officials (Various Dates):** These notes consistently mention Danner's involvement in strategic meetings, her recommendations for Alic's supervision, and her direct communication with other officials about Alic's case.

**Example:** A note dated December 3, 2020, details a meeting where Danner was present and provided input on Alic's case management plan.

**Consistent False Denials:** Danner's repeated denials of involvement in Alic's case are consistently contradicted by documented evidence. This pattern was an attempt to obscure her role and actions in the case, to avoid accountability for misconduct or procedural violations.

**Manipulation of Records and Communications:** Manipulation is evident in selective communication and internal notes. For instance, while Danner publicly denies involvement, internal records show her active participation in discussions and decisions regarding Alic. This dual approach exposes intent to manipulate the perception of her involvement.

**Collusion with Other Officials:** The coordinated actions between Danner, Kibler, and other officials demonstrate a collusion to present a united front that obscures the truth. The internal notes and correspondence reveal a concerted effort to fabricate a narrative that justifies their actions against Alic, despite the lack of legal basis.

**Obfuscation of Procedural Failures:** By denying involvement and manipulating records, Danner and her colleagues   obfuscated the procedural failures and due process violations that occurred. This obfuscation served to protect themselves from scrutiny and legal repercussions, while continuing to subject Alic and me to unjust treatment.

**Due Process Violations:** The deceit and manipulation by Danner and other officials directly violate the due process rights guaranteed under the Fourteenth Amendment, as established in cases like In re Gault.

The coordinated actions of the Shenandoah County Commonwealth of Virginia et. al demonstrate a concerted effort to infringe upon our rights through the abuse of judicial and administrative power. This egregious violation of due process principles is a clear prima facie infringement of our constitutional rights, further exacerbated by the gross misuse of state power to target and victimize our family.

Danner's false denials are considered perjury, particularly since made under oath and in official documents.

Judge Logan's egregious actions constitute a paradigmatic example of an unconstitutional assumption of power, precipitating a seismic breach of the separation of powers doctrine. By usurping executive and legislative functions, Judge Logan's actions offend the foundational principle of constitutional governance, imperiling the very fabric of our system of checks and balances. This flagrant usurpation of power violated the non-delegation doctrine, which proscribes the unconstitutional transfer of judicial authority, thereby jeopardizing the integrity of our judicial system.

This brazen encroachment on legislative authority eviscerates the doctrine of separation of powers, creating a constitutional crisis that imperils the very foundations of our democracy. Judge Logan's actions constitute an outrageous breach of the separation of powers doctrine, precipitating a constitutional crisis of unprecedented proportions.

Furthermore, the government officials' egregious and reprehensible conduct in this case constitutes a fraud upon the court of monumental proportions, as they brazenly submitted falsified evidence and willfully misrepresented Alic in a deliberate and malicious manipulation of the legal system, subverted the truth, and avoid judicial scrutiny.

Judicial immunity does not shield judges from non-judicial actions, including administrative decisions. Judges only receive immunity for actions within their judicial capacity, provided they fall within their jurisdiction. As such, the juvenile court's premature assertion of jurisdiction,

based on a defamatory petition lacking credible evidence or procedural backing, falls outside the bounds of immunity. The defamatory statements constitute defamation per se and malicious prosecution,

The precedents set forth in Forrester v. White and Mireles v. Waco by the Supreme Court are particularly instructive, delineating the scope of judicial immunity. It is explicit that such immunity does not extend to non-judicial actions, a principle acutely relevant to our case. The actions undertaken by the juvenile court, which have transgressed these judicial boundaries and entered the administrative sphere, do not fall under the umbrella of immunity.

Judge Logan and Judge Black's actions in collusion evidenced by the unlawful 34 days imprisonment I endured based on the false petition that stemmed from a false court order regarding the entire legal malpractice exceeded the boundaries of judicial authority and encroached upon the executive and legislative branches' domains. This blatant disregard for the separation of powers undermines the checks and balances fundamental to our constitutional system. violation of the separation of powers doctrine is reinforced by the Supreme Court's decision in Mistretta v. United States, 488 U.S. 361 (1989), which emphasized the importance of maintaining the delicate balance of power between the branches of government.

The judiciary's role is to interpret and apply the law, not to usurp the authority of other branches. By doing so, Judge Logan's actions undermine the integrity of the judicial system, compromising the very foundation of our constitutional democracy and establishes a compelling basis for the motion to reopen, as it undermines the legitimacy of Judge Logan's actions and underscores the urgent need for judicial accountability.

The actions taken against us constitute malicious prosecution and violate substantive due process rights. Albright v. Oliver, 510 U.S. 266 (1994), discusses malicious prosecution as a substantive due process violation under the Fourteenth Amendment with malice, and resulted in a deprivation of both mine and Alec's freedom and liberty interests.

The state, through the actions of its agents of the Shenandoah County Commonwealth of Virginia), created danger to Alic, violating his constitutional rights as a juvenile. The actions taken against us were without any valid legal basis, were malicious, not in Alec's best interest, and violated federal principles guiding child welfare, breaching its duty to safeguard the rights of minors as established in DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), establishes that the state has a duty to protect individuals from harm when it creates or increases the risk of harm

The defendants' conduct exhibited a blatant disregard for the safety and welfare of my son. Their actions were negligent and reckless, that created a perilous environment that continues to pose a direct threat to our family's security. The defendants deprived us of our constitutional right to due process by continuously manipulating the legal system to their advantage.

In particular, the government officials' actions in this case are reminiscent of the egregious abuses of authority condemned in the landmark case of Mooney v. Holohan, 294 U.S. 103 (1935), where the Supreme Court recognized that the use of perjured testimony by the prosecution violated the defendant's due process rights. These actions constitute a severe violation of procedural due process and parental rights under the Fourteenth Amendment.

The defendants' actions demonstrate the systemic failure to uphold child welfare laws and federal guidelines, has resulted in profound miscarriages of justice in both the Shenandoah County and in the Western District of Virginia that continues to have negative consequences for our family

Furthermore, the government officials' egregious and reprehensible conduct in this case is tantamount to a fraud upon the court of monumental proportions, as they brazenly presented falsified evidence and willfully misrepresented Alic in a deliberate and malicious attempt to manipulate the legal system, subvert the truth, and avoid judicial scrutiny.

Judge Logan motivated by a desire to exert control or exact compliance, imposed unconstitutional conditions on us, deprived us of our liberty interests without a constitutionally sufficient process. This Orwellian behavior undermines the very fabric of our justice system, as it allows judges to wield unchecked power, disregarding the rights and dignity of the individuals before them

Judge Logan's unchecked power as the sole decision-maker is a direct contradiction to the ideals of judicial impartiality highlighted in Caperton v. A.T. Massey Coal Co. The fact that his decisions cannot be appealed underscores a clear violation of the separation of powers doctrine. These actions transcend mere procedural errors; they serve as intentional barriers to justice, disregarding Virginia's essential procedural safeguards that are crucial in protecting parental rights. Drawing a parallel between Judge Chad Logan's conduct and the historical misconduct of his father, William H. Logan, as detailed in Smith v. William H. Logan and Luke Witt (1970), underscores a troubling pattern of judicial malpractice spanning generations within Shenandoah County's judicial system. Allegations of perjured testimony in securing convictions, as seen in Smith v. Logan, eerily echo the current proceedings led by Judge Chad Logan. The manipulation of legal processes to unjustly target Alic, including manufactured charges and the fabrication of a CHINS adjudication sheet, and submission of this evidence to the District Court resonates with the unethical practices historically associated with his father William Logan...

By exploiting Virginia's Child Welfare Laws, the defendants have demonstrated a pattern of abuse of power, prioritizing their own interests over the well-being and rights of my son.

The concerted effort to manipulate legal proceedings and deprive us of our rights constitutes fraud upon the court and demands immediate rectification. This fraud directly impacted the initial judgment, causing the District Court to dismiss the case without full knowledge of the misrepresentation. The series of events were deliberate and orchestrated in the effort to manipulate the legal process, undermine my and Alic's rights, and conceal the truth. 42 U.S.C. §

1983 Provides a remedy for individuals whose constitutional rights are violated by persons acting under color of state law. The defendants' actions, including defamation and procedural misconduct, fall squarely within the violations addressed by this statute.

The procedural misconduct in this case is significant and the violations are numerous. In addition to the substantive due process and Fourth Amendment violations, the unconstitutional delegation of judicial authority constitutes a distinct violation of our rights, warranting relief under 42 U.S.C. § 1983.

The defendants' actions constitute an unbridled abuse of power, born from a gross abuse of their authority and a callous disregard for the consequences of their actions. By circumventing the statutory safeguards designed to protect the rights of individuals, the defendants have perpetrated a grave injustice that undermines the very foundations of our legal system.

The Shenandoah County Child Welfare System's disregard for mandated protocols to remove a child from their home solely when their safety is at risk, and failure to reunify families whenever feasible, demonstrates a systemic failure to uphold fundamental principles of child welfare and familial integrity. This failure not only undermines the rights of parents but also jeopardizes the well-being of children caught in the child welfare system. It is incumbent upon state officials not only to follow proper procedures but also to provide clear and convincing evidence justifying their actions, The actions of the Shenandoah County Child Welfare System reflect a pattern of behavior where efforts are made to separate families and hinder reunification, rather than prioritizing the best interests of the child and preserving family unity.

This systemic disregard for mandated protocols not only violated established legal standards but also perpetuates a cycle of harm and injustice within the child welfare system. It is imperative that the court acknowledges and addresses these systemic failures to ensure the protection of families' rights and the well-being of children in Shenandoah County. The defendants' unwarranted removal of children infringes upon the concept of substantive due process. Lassiter v. Department of Social Services (1981). Santosky v. Kramer, Smith v. Wade, and DeShaney v. Winnebago County Department of Social Services, emphasize the importance of procedural due process, parental rights, and government accountability.

The lack of accountability and transparency in the defendants' actions reveals a disturbing pattern of injustice that affects countless individuals and families Furthermore, the Children's Bureau, part of the Administration for Children and Families under the U.S. Department of Health and Human Services, issues guidelines and policies aimed at improving child welfare systems. The failure of federal agencies overseeing local child welfare systems, like the Department of Health and Human Services (HHS), failure to intervene and address these violations implicates them in perpetuating the violation of federal laws and constitutional rights.

The state must be held to account for the suffering inflicted by its own agents. The Shenandoah County Juvenile Court and SCDSS's egregious violations of constitutional rights, procedural due

process, and child welfare statutes warrant the reopening of this case, The damage caused by this injustice is profound and the resulting trauma have left indelible scars on our family.

The actions taken by the Shenandoah County Commonwealth and its agents have not only caused immeasurable harm to my son, Alic Cole Stanley, and me, but they have also struck at the very core of what we hold dear as a society—the rule of law, due process, and the sanctity of family.

This is not merely a legal battle; it is a fight for the very essence of justice. My son, at just 16 years old, was thrust into a legal nightmare based on baseless and malicious accusations. He was unjustly labeled as a Child in Need of Supervision without any evidence or due process. His childhood was marred by fear, confusion, and a sense of betrayal by a system that is supposed to protect him.

As his mother, I have experienced an anguish that words cannot fully capture. The sense of helplessness when your child is taken from you unjustly is a pain that no parent should ever endure. My right to care for and protect my child was callously stripped away, and we were left to navigate a labyrinth of legal manipulations and deceptions that sought to undermine our rights and liberties.

The Shenandoah County Juvenile Court's actions were not just procedural errors; they were deliberate acts of injustice. The unauthorized filing of the petition, the denial of proper notice, the lack of a fair hearing, and the malicious misrepresentation were all calculated moves to strip us of our rights and dignity. These actions have left deep emotional scars and have shaken our faith in the legal system.

Thank you, Your Honor, for your time, your consideration, and your commitment to justice. I trust that you will see the profound importance of reopening this case and allowing us the fair and just process that we were unjustly denied.

Respectfully Submitted,

Megan Whittington, Plaintiff, pro se and

4/11/2024

Alic Cole Stanley

Megan Whittington
120 Hottel Road
Woodstock, VA. 22664




U.S. POSTAGE PAID
FCM LG ENV
WOODSTOCK, VA 22664
JUN 12, 2024

22802

RDC 99

$2.35

R2304M115866-05

United States District Court
Western District of Virginia
116 N. Main Street
Room 314
Harrisonburg, VA. 22802