# United States District Court for the Western District of Virginia

**Megan Whittington**

  Plaintiff, Pro Se

**The Shenandoah County Commonwealth of Virginia et. al,**

  Defendants

**The Honorable Judge Thomas Cullen**

**Civil Action No. 5:21-00066**

v.

CLERK'S OFFICE U.S. DISTRICT COURT
AT HARRISONBURG, VA
FILED

OCT 17 2024

LAURA A. AUSTIN, CLERK
BY:
  DEPUTY CLERK

Motion to Reconsider and Reopen Case

**COMES NOW** Plaintiff, Megan Whittington, pro se, and respectfully moves this Honorable Court to reconsider and reopen the above-captioned matter pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure.

This motion is based on extraordinary circumstances arising from substantial evidence that demonstrates significant misrepresentations made by the Shenandoah County Commonwealth of Virginia. These misrepresentations have critically undermined the integrity of the original proceedings and have deprived the Plaintiff of her fundamental rights.

**Grounds for Reconsideration:**

**Significant Misrepresentations:** Evidence has come to light showing that key facts were misrepresented by the Shenandoah County officials, which directly affected the outcome of the original case. These misrepresentations constitute a clear violation of the principles of justice and due process.

**Extraordinary Circumstances:** The ongoing impact of these misrepresentations creates an extraordinary situation that warrants the Court's intervention. The Plaintiff has been subjected to significant emotional distress and hardship as a result of the unjust actions taken against her family, leading to a miscarriage of justice.

**Interest of Justice:** Allowing this motion would serve the interests of justice by ensuring that all relevant facts and evidence are properly considered. It is imperative that the Court rectify any injustices that arose from the original proceedings, ensuring a fair and just outcome.

It is with a profound sense of urgency that I submit this detailed explanation to clarify the recently uncovered facts that expose the unfair legal proceedings that were initiated  and maliciously prosecuted against my family.

My desperate plea for justice remains committed and is grounded in the unbreakable maternal bond evidenced by a series of nearly one hundred complaints and appeals for assistance, all of which were met with a chilling indifference further devastating my family. Despite my desperate pleas critical information was purposely concealed by the defendants and has not been disclosed to this Court., exposing the deep-rooted corruption in the Shenandoah County Commonwealth of Virginia, particularly within its legal and Child Welfare System.

I bring before this Court the urgent need for action to address the egregious violations committed by Shenandoah County officials, who, acting under the guise of lawful authority deprived us of our constitutional rights, including but not limited to due process and equal protection. It is with profound urgency that I respectfully submit this detailed explanation to clarify the recently uncovered critical information that was purposely concealed by the defendants and has not been disclosed to this Court, exposing the deep-rooted corruption in the Shenandoah County Commonwealth of Virginia, particularly within its legal and Child Welfare System.

After exhausting every possible state remedy and submitting numerous complaints to various authorities—including the governor and the Virginia Department of Social Services—I sought justice in the U.S. District Court for the Western District of Virginia. On October 7, 2021, I filed a complaint and sought an injunction to protect my son and me from the ongoing violations against the Shenandoah County Commonwealth of Virginia, its legal and child welfare systems, and numerous individual state officials involved.

This action addressed numerous constitutional violations that arose before and after the unlawful removal of my nearly 17-year-old son, Alic Stanley, from our home without prior notice or a court hearing all by use of threat and intimidation without a court hearing or consideration for his welfare as explained in the initial complaint. Despite my efforts, the state's fraudulent tactics persisted. Their filings to the District Court deliberately and deceptively misrepresented Alic as a Child in Need of Supervision (CHINS), a designation of which I had no prior knowledge, thus exploiting both my lack of legal expertise and my pro se status. The fraudulent nature of the petition was concealed from me at the time of filing. The defamatory misclassification damaged Alic's reputation and tarnished my credibility as a responsible parent.

They deliberately defamed both my son and me across multiple jurisdictions and unfairly damaged my legal standing resulted in significant miscarriage of justice in the Western District of Virginia, constituting a grave abuse of the judiciary and a prima facie fraud upon the court of monumental proportions.

The state, through its Department of Education, Juvenile Court and Department of Social Services (SCDSS), grossly abused their power granted to them by the state of Virginia from the outset and undermined my ability to protect my son against their baseless prosecution that subjected my family to illicit state control for more than twelve months and culminated in Alic's unlawful removal from my custody creating danger where there was none and inflicted irreparable damage upon my family.

Due process is a fundamental constitutional right that ensures the government follows fair procedures before depriving individuals of life, liberty, or property. However, in this case, the

government violated this principle by depriving me of my liberty interest in the care, custody, and control of my child. We were stripped of our basic human rights by a system that is supposed to safeguard them, only to be left abandoned and thrust into a nightmarish ordeal that continues to haunt me to this day. They knowingly fabricated charges and unlawfully removed my son from our home with malicious intent. In Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970), the Supreme Court established that when state actors conspire to deprive individuals of their civil rights, they violate federal law and are liable for civil damages.

The states actions unfolded under the dark cloud of § 16.1-241(A1), a provision manipulated to circumvent an evidentiary foundation and established procedural standards for jurisdictional matters, effectively constituting a grave form of jurisdictional fraud by Judge Logan who presides over all juvenile court proceedings and deliberately failed to uphold the procedural safeguards mandated by the Due Process Clause.

The statute requires a proper adjudication of facts to establish the jurisdiction of the Juvenile Court over a minor, yet no such adjudication took place in Alic's case. This stark violation of our due process rights, effectively predetermined Alic's status without any court proceedings having occurred. It implied delinquent behavior and a lack of supervision, defamatory accusations that were not only unsubstantiated but maliciously used to strip us of our rights and justify the state's illicit intrusion in our lives without the opportunity to ever challenge their actions.

In re Winship (1970), the United States Supreme Court established that the state must prove its charges against a juvenile beyond a reasonable doubt. Instead, we were ambushed in the Shenandoah County Juvenile Court and the false CHINS classification was imposed without my knowledge and we were immediately treated as criminals without ever having committed a crime. The misapplication of § 16.1-241(A1) was an unlawful exercise of jurisdiction that cannot be justified on any legal or factual basis.

My son, Alic, was never deemed to be a Child in Need of Supervision (CHINS), and the unwarranted intervention by Shenandoah County occurred without notice, intentionally undermined my parental rights. There were no court hearings that adjudicated my son as a child in need of supervision nor was my capability as a parent ever questioned. the predetermined nature of the original petition filed arbitrarily in the juvenile court exposing jurisdictional fraud. The violations of both statutory law and my family's constitutional rights expose a systematic abuse of discretion, which led to severe and unjust consequences for my family. The actions by Shenandoah County were unjustified and unlawful, resulting in a dangerous and unlawful state intrusion exposed us to further cruel and unusual treatment. The Juvenile Court, acted without valid subject matter jurisdiction, dictated our lives for over twelve months in a manner emblematic of tyrannical governance with malicious intent lacking any legitimate adjudicatory support.

The state's actions were arbitrary and discriminatory they were neither justified nor grounded in any compelling need to protect Alic. Instead, the state abused the CHINS child in need of supervision child welfare program to serve its own interests, disregarding the very principles it was intended to uphold. Government officials' conduct lacked legitimate state interest, nor was it

narrowly tailored to any constitutional purpose (Washington v. Glucksberg, 521 U.S. 702 (1997)), stripping us of basic human rights and denying my ability to defend and protect myself and my son.

The court's actions violated procedural due process as guaranteed by the Fourteenth Amendment, depriving me of the opportunity to challenge the baseless claims from the outset. This denial stripped away my right to contest false allegations, leaving me defenseless against a calculated legal ambush that tore my family apart. The lack of procedural safeguards not only breached state law but also constituted a grave violation of our constitutional rights under the Fifth and Fourteenth Amendments, as well as the ethical and legal duties of state officials.

Shenandoah County's failure to follow proper legal procedures rendered its actions void ab initio. Acting without legal foundation, the state deprived my family of our rights and subjected us to over twelve months of malicious prosecution. This blatant disregard for due process shows how the denial of procedural safeguards leads to severe miscarriages of justice and irreparable harm.

The state's failure to provide procedural safeguards allowed it to circumvent constitutionally mandated protections, constituting a prima facie case of systematic legal malpractice. Procedural due process, as articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), which affirms the right to notice and an opportunity to be heard before the state can deprive someone of their liberty. The failure to adhere to these fundamental principles of justice demonstrates the state's criminal actions under the Fifth Amendment. Furthermore, Santosky v. Kramer, 455 U.S. 745 (1982), emphasizes that child welfare cases require heightened evidentiary standards and robust procedural safeguards due to the profound impact state intervention has on families. In our case, these safeguards were completely absent—we received no proper notice, no fair hearing, and no opportunity to defend ourselves.

As confirmed in Troxel v. Granville, 530 U.S. 57 (2000), the state must meet a high burden before intervening in family matters. Shenandoah County failed to meet this burden, stripping us of our rights without providing the constitutionally required procedural protections. This reckless disregard for due process left my family exposed to unlawful state actions, resulting in long-term harm that could have been avoided if the law had been properly followed.

The state's actions were arbitrary and discriminatory they were neither justified nor grounded in any compelling need to protect Alic. Instead, the state abused the CHINS child in need of supervision of the child welfare program to serve its own interests, disregarding the very principles it was intended to uphold. Government officials' conduct lacked legitimate state interest, nor was it narrowly tailored to any constitutional purpose (Washington v. Glucksberg, 521 U.S. 702 (1997)), stripping us of basic human rights and denying my ability to defend and protect myself and my son.

The lack of knowledge of this fraud underscores the ongoing nature of the violations, as I was denied due process rights guaranteed under both state and federal law. The Supreme Court in Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), held that procedural due process is a fundamental right, and its denial constitutes a continuing constitutional injury until it is rectified.

The juvenile court system, overseen solely by Judge Chad Logan in Shenandoah County, leaves no room for recourse. His rulings, are not appealable, perpetuated the fraud by denying my family the opportunity to challenge or correct the unlawful actions taken against us. The inability to appeal his decisions allowed the fraudulent CHINS classification to remain in place, causing further damage to my family's rights and well-being. This systematic denial of a fair process was a clear abuse of judicial power and represents a violation of the Fourteenth Amendment's guarantee of due process. This exposes profound injustices endured, with intentional disregard for fairness and justice principles enshrined in the Constitution.

The continued denial of the right to appeal his rulings in a corrupt system where unilateral decisions are made without oversight or the opportunity for redress, further entrenched the violations of our rights and deepened the procedural injustices. The concentration of judicial power violates the principles of procedural fairness and the lack of recourse to challenge Judge Logan's decisions resulted in a systemic deprivation of due process. This situation left my family without a means of redress, as it unfolded without a valid basis or proper adjudication, revealing a willful disregard for the law and our rights.

Shenandoah County officials, through their fraudulent actions and disregard for legal safeguards, stripped my family of its dignity and autonomy. By falsely labeling my son under the CHINS classification and bypassing the legal procedures meant to protect us, they launched an unjustified attack on our constitutional rights. The Supreme Court's ruling in Ex parte Young, 209 U.S. 123 (1908) makes clear that federal courts can intervene when state officials violate federal law, and this case is no exception. The officials in question misrepresented my son's legal status, hiding behind a false appearance of legitimacy to justify their unlawful interference in our lives.

Their actions amount to a coordinated conspiracy, as evidenced by their collective efforts to deprive us of our rights. 42 U.S.C. § 1983 grants me the right to seek relief for this deprivation, since state officials, acting under color of law, violated our due process rights. Further, their calculated actions fit the definition of a conspiracy under 42 U.S.C. § 1985, where they deliberately and maliciously fabricated charges to suppress our rights and control our family.

These state actors, using intimidation and manipulation of the CHINS program, unlawfully intruded into my family's life. Their conduct violated both the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment. By stripping me of my parental rights without cause or legal foundation, their actions represent a clear and intolerable conspiracy, a violation of the law that demands redress under 42 U.S.C. § 1985.

The fraud perpetrated by Shenandoah County officials against my son and my family was not only an egregious violation of federal law but also an ongoing harm that continues to infringe upon our constitutional rights. The fraudulent CHINS classification, the denial of due process, and the inability to appeal these unlawful actions have caused irreparable harm. The court must recognize the ongoing nature of this fraud and grant appropriate relief to rectify the injustice.

This is not merely a personal grievance; it is a violation of fundamental constitutional principles. The fraudulent actions of Shenandoah County have left my family trapped in a cycle of injustice,

with no means of redress, and those responsible must be held accountable under the law. The fraud upon the court, the continuing constitutional violations, and the denial of justice demand immediate judicial intervention.

The failure of the child welfare system to act in Alic's best interests—instead acted with a deliberate indifference to my family's well-being, and post facto charges were manufactured to retroactively justify their wrongful detention of my son and the unlawful removal of him from my home all in service of illegitimate state power and represent stark manifestation of governmental tyranny, where the abuse of power is both flagrant and unrestrained.

The trauma inflicted on my family is a wound that words cannot fully capture. However, I am not resigned to despair. With unwavering resolve, I am committed to seeking justice—not just for my son's future and our family's dignity, but for every parent and child who suffers under this same system of abuse. This is a call to action for systemic change and the protection of our most vulnerable.

The doctrine of malicious prosecution further applies here, as the state's actions were not grounded in probable cause, nor were they pursued with any legitimate legal purpose. Instead, these actions were intended to harm my family, using legal mechanisms improperly to achieve an unlawful outcome.

The false classification severely prejudiced our reputation and legal standing caused profound harm to both his character and our family's integrity I was left to navigate a corrupt legal system that had already predetermined its course without our knowledge effectively restraining our ability to live freely without constant fear from the illicit state interference that was neither reasonable nor justified and left us in a state of constant uncertainty and fear that further compounded the trauma inflicted on my family. Shenandoah County's actions were unconstitutional and amounted to state-sanctioned abuse. The full weight of the legal system was used against us, not for justice, but to crush us and represent nothing less than an abuse of state power in perversion of justice designed to inflict maximum harm on our family.

My son and I endured horrors no family should ever face. The state's actions were not only illegal but deliberately indifferent to the well-being of my family, causing us deep emotional and psychological scars.

The petition filed by Amanda Kibler constitutes a direct violation of both juvenile justice standards and my constitutional rights. By falsely asserting jurisdiction and unlawfully classifying my son, Alic, as a Child in Need of Supervision (CHINS), this petition flagrantly disregarded legal requirements under Virginia Code § 16.1-241(A)(1) and deprived us of our due process rights under the Fourteenth Amendment. The Shenandoah County Juvenile Court had no legal authority to intervene in my son's life based on this petition, which lacked factual basis and was deliberately crafted to manufacture jurisdiction where none existed.

Under the principles of juvenile justice, jurisdiction can only be asserted when there is clear evidence to support the legal classification of a child as CHINS. The petition's claims were false, and the court's acceptance of these claims as sufficient grounds for jurisdiction was not only

improper—it was unlawful. The law clearly required the Juvenile Court to conduct a proper hearing, verify the petition's validity, and provide me with the opportunity to challenge the state's claims. None of this happened. There was no evidence of truancy or delinquency—no foundation for the state to claim jurisdiction over my son violating substantive and procedural due process rights constituting an egregious abuse of state power. Alic, who had no history of truancy, delinquency, or abuse, was on track to graduate early, successfully completed his education in March 2021.

However, the court proceeded without probable cause, violating procedural and substantive due process, equal protection, and fair legal proceedings. These actions egregiously stripped us of our fundamental human rights, undermining my ability to defend myself and protect my son and exposed my family to a conspiracy to deprive us of our rights.

The Fourteenth Amendment guarantees that no state shall deprive any person of life, liberty, or property without due process of law. This includes the fundamental right of parents to make decisions concerning the care, custody, and control of their children. The court, in collusion with Kibler, acted in direct violation of these constitutional protections by failing to notify me—Alic's legal guardian—of the CHINS designation or any related proceedings. This failure to provide notice and an opportunity to be heard was a clear breach of due process. The court's secretive actions deprived me of my right to challenge the false classification and defend my son.

Virginia law mandates that judges make decisions based on fact and legal precedent, but here, arbitrary decision-making replaces justice and embodies failure in the judiciary's duty to uphold the principles of fairness. The juvenile court disregarded statutory requirements and established legal principles that mandate jurisdiction must be based on credible evidence and strict compliance with legal standards. The Supreme Court of Virginia has consistently held that actions taken without proper jurisdiction are void ab initio and cannot support lawful intrusion, as demonstrated in United States v. State Corp. Comm'n of Va., 560 S.E.2d 605 (Va. 2002).

There is no legal ambiguity here: the court exceeded its jurisdiction by acting on a fraudulent petition without following the mandatory legal procedures. The law requires verified evidence and proper notice before jurisdiction can be asserted in juvenile cases. In this instance, both were absent. The fraudulent petition and the court's failure to adhere to due process render any legal actions taken by the court void from the outset.

The court's conduct represents an unlawful overreach, undermining the integrity of both juvenile justice and constitutional law. The CHINS classification was never lawfully adjudicated, and the court's reliance on fabricated claims to assert jurisdiction was a clear violation of state law and constitutional rights. The entire legal basis for the court's involvement in Alic's life was predicated on a falsehood, and any actions taken by the court under this false pretense must be considered null and void. This is a case of state overreach based on deception, and it must be rectified to restore the rule of law and protect the rights of my family.

The Juvenile Court, acted without valid subject matter jurisdiction, dictated our lives for over twelve months in a manner emblematic of tyrannical governance with malicious intent lacking any legitimate adjudicatory support. These actions egregiously stripped us of our fundamental

human rights, undermining my ability to defend myself and protect my son and exposed my family to a conspiracy to deprive us of our rights. The juvenile court deprived me of my parental rights without any legal justification. No due process was afforded to me, as required by law. In *Parklane Hosiery Co. v. Shore* (439 U.S. 322, 1979), it is established that legal actions cannot proceed based on fraud or false claims. Yet, Shenandoah County Commonwealth of Virginia et. al, relied on these falsehoods to strip me of my rights as a parent and separate my son from our family.

*Logan v. Fairfax County Department of Human Development* (1991) further reinforces that government agencies cannot fabricate jurisdiction or act without legitimate legal grounds. Shenandoah County's actions in filing a fraudulent petition were an unlawful overreach of authority and violated basic principles of fairness and justice. The court's reliance on these false claims was not a mistake—it was a calculated abuse of power. The officials in Shenandoah County intentionally withheld critical information from me, depriving me of the opportunity to protect my son and fight the false charges.

The petition SUBMITTED TO THE District court falsely classified my son, Alic, as a *Child in Need of Supervision* (CHINS) was not just an error or misunderstanding—it was a deliberate, premeditated act of malice designed to give the state unchecked control over our family. This was no mistake; this was calculated cruelty. As a result, the state secured judgment in the district court through gross misrepresentation, entrapping us in a cycle of deceit and powerlessness.

Their actions were not only unlawful but malicious, as they undermined my parental rights without any legal basis. In *Wyatt v. McDermott* (2012), the Virginia Supreme Court recognized the tort of intentional interference with parental rights, and that is exactly what occurred here. Shenandoah County officials deliberately interfered with my relationship with Alic through fraud and deceit. falsely portraying my son as a CHINS without legal basis or adjudication, Shenandoah County's officials deprived the District Court of the ability to fairly adjudicate the matter, violating the integrity of the proceedings. This deprived us of our liberty interests under the Fourteenth Amendment, which guarantees due process and equal protection. Wyatt v. McDermott (2012) emphasizes the significance of parental rights, and the Virginia Supreme Court has revived common law torts, such as intentional interference with parental rights, to address state actions that unlawfully intrude upon the parent-child relationship. The fraudulent actions of Shenandoah County officials qualify as intentional interference, carried out with the malicious intent to harm our family.

The Virginia Supreme Court's decision in *Wyatt v. McDermott* (2012) underscores the fundamental nature of parental rights. The Court's revival of the common law tort of intentional interference with parental rights allows redress against state actors whose unlawful conduct intrudes upon the sanctity of the parent-child relationship. The conduct of Shenandoah County officials clearly qualifies as intentional interference, maliciously executed with the intent to harm our family. The fraudulent CHINS classification triggered a cascade of constitutional violations against my family. The removal of my son from our home, and both of our false imprisonments and the restrictions placed on my parental rights by use of threat and intimidation were all based on the fabricated petition.

These actions violated my son's fundamental liberty interests, which are safeguarded by the Fourteenth Amendment's guarantees of due process and equal protection.

In *Brokaw v. Mercer County* (235 F.3d 1000, 7th Cir. 2000) and *Croft v. Westmoreland County Children and Youth Services* (103 F.3d 1123, 3d Cir. 1997), it is established that government interference with parental rights without legal justification is a violation of constitutional rights. Shenandoah County's removal of my son, based entirely on falsehoods, parallels the unlawful actions in these cases.

The actions of Shenandoah County and its affiliates constitute multiple statutory and constitutional violations that demand the reopening of this case in the interest of justice. These violations occurred through deliberate misrepresentation, procedural misconduct, and abuse of the legal system. The use of fraudulent legal status mirrors the kind of systemic abuse condemned by the U.S. Supreme Court in cases like Moore v. Dempsey and Mapp v. Ohio, where the courts held that fabricated evidence and government overreach irrevocably corrupt the judicial process. The state manipulated the child welfare system, betraying the very principles it should have upheld. This injustice subjected me and my 16-year-old son to severe legal malpractice within Virginia's Child Welfare system, showing deliberate indifference to my son's safety and well-being.

Judge Logan and Shenandoah County officials conspired deliberately to manipulate the judicial process, obscuring truth and subverting fundamental principles of fairness and justice. Their unconstitutional actions from the outset demonstrate a blatant and intentional disregard for legal standards, equity, and integrity. This exemplifies systemic misconduct, where state authorities operate beyond accountability, entrenched in a pervasive culture of corruption and abuse that erodes the very foundations of justice.

These actions are actionable under § 1983, holding the state liable for irreparable harm caused to my family. Discovery of new facts and deliberate misrepresentations by Shenandoah County officials persuaded the district court to accept false jurisdictional claims, resulting in severe injustices. Egregious abuse and misconduct inflicted ongoing harm and constituted fraud upon the court. Judge Logan's overreach in this case, driven by fabricated claims under § 16.1-241(A)(1), clearly exceeds judicial immunity and warrants full legal scrutiny.

*Miller v. City of Norfolk*, 118 Va. 776 (1915) the Virginia Supreme Court held that actions by public authorities must be grounded in legitimate legal authority and cannot be exercised arbitrarily or without a lawful basis. The most egregious element of the fraud committed by Shenandoah County officials lies in their deliberate concealment of the fact that no adjudication had taken place before the petition was submitted. At no point was I informed of the CHINS (Child in Need of Supervision) designation for my son, before it was used as the basis for the unlawful assertion of jurisdiction. This omission strikes at the core of due process protections enshrined in the Fourteenth Amendment and federal procedural law. As established in *Brokaw v. Mercer County* and *Croft v. Westmoreland County Children and Youth Services*, governmental actions that interfere with family integrity must be grounded in legitimate legal authority.

Without due process, actions were unconstitutional and void from inception.

The fraudulent petition was presented to the United States District Court for the Western District of Virginia as though it rested on proper legal grounds. In reality, it lacked any such foundation. The submission of false information to a federal court is a grave offense—constituting fraud upon the court, as outlined in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944). By falsely representing my son without any adjudication, Shenandoah County officials obstructed the court's ability to fairly assess and rule on the matter, thus compromising the integrity of the entire judicial process.

By concealing material facts and submitting a baseless petition to federal court, Shenandoah County officials committed an egregious abuse of power. Their actions reflect not only a violation of my family's rights but also an assault on the very principles of justice. It is imperative that the fraud upon the court and the continuing violations of our constitutional rights be fully addressed. This case demands not only recognition of the past wrongs committed against us but also immediate legal remedy to rectify the ongoing damage to our family.

There is no ambiguity here. The fraudulent petition, the unlawful actions of Shenandoah County, and the deprivation of my due process rights were intentional and illegal from the start.

The state's misuse of the juvenile justice system to impose unlawful control over my family constitutes a violation of 42 U.S.C. § 1983, which protects individuals from deprivation of rights under color of state law.

The government exploited the CHINS (Child in Need of Supervision) program to justify my son's removal and maintain control over my family. The abuse of this legal system to falsely classify my son as a CHINS was a direct attack on our constitutional protections. Those responsible must be held accountable for their intentional violation of the law, which caused irreparable harm to my family and denied us due process. This is not merely a personal injustice—it is an unlawful abuse of state power that demands immediate correction.

The defendants' actions were not mere errors or oversights—they were deliberate, calculated, and malicious. The fraudulent classification of my son as a CHINS was engineered to justify his unlawful removal and detention, with the sole intent of validating false allegations that never had any legal basis. Shenandoah County officials conspired to conceal these facts from me, to deprive us of due process, and to prevent this Court from knowing the full truth.

The actions of Shenandoah County officials in submitting a petition to classify my son as CHINS were fundamentally flawed and rooted in jurisdictional fraud. The Court was misled to believe that a valid adjudication had occurred when, in fact, no such proceedings were conducted. Their unlawful actions caused irreparable harm, and we are entitled to significant relief for these violations.

My son was unlawfully detained for 23 days, and I was imprisoned for 49 days under false pretenses, without legitimate court orders. For eleven months, we were subjected to threats and intimidation forcing us to endure supervised visitation, without a lawful court order and without lawful jurisdiction a severe violation of our familial rights and an intentional infliction of emotional trauma that has caused irreparable damage to our family. The psychological damage

and humiliation we endured reflect a profound abuse of power by state officials, who conspired to manipulate the legal system against us.

The submission of false information in the federal court, as seen in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, constitutes fraud upon the court. The defendants deliberately deceived the court and suppressed material information, obstructing the judicial process. This fraudulent activity undermines the integrity of the court and justifies reopening the case for further examination.

Under Title 18 U.S.C. § 1001, the state's fraudulent misrepresentations constitute criminal violations, as they knowingly provided false statements to a federal entity. By withholding exculpatory evidence, including the fact that my son, Alic, was never legally deemed a CHINS, and by presenting false testimony to the court, the state orchestrated a legal charade. They ensured that the District Court's ruling was based on fraudulent and misleading information, all while intentionally suppressing critical evidence that would have exposed the truth. These actions were not mere oversights; they were deliberate acts, calculated to deceive the court and avoid scrutiny only to prolong their fate revealing misuse of legal mechanisms intended to harm us. They deliberately suppressed from the district court the fact that the juvenile court lacked a lawful jurisdictional foundation for the state's illicit intrusion in our family's affairs and concealed the fact that Alic was never lawfully adjudicated as a truant or a child in need of supervision.

I was forced to witness in horror, my sixteen year old innocent son ripped from our home and unlawfully detained for 23 days without cause. Twenty-three days of extreme fear and distress, while the juvenile court, in collusion with Heather Frost, Stephanie Danner and the Shenandoah County Department of Social Services (SCDSS), knew that Alic was innocent. The subsequent unlawful removal from our home deepened the emotional turmoil and trauma inflicted upon our family. I was powerless to intervene as my child was torn away from me, an act that was not only unjust but entirely devoid of any legal justification.

The cruel nature of Alic's detention due to manufactured violations of the invalid court order cannot be understated. For twenty-three days, he was subjected to false imprisonment causing extreme fear and uncertainty, which has undoubtedly inflicted lasting psychological harm. The Eighth Amendment is designed to protect individuals from inhumane treatment, and the emotional trauma caused by such a wrongful detention represents a severe violation of these protections. Being unjustly separated from your family and the stress of being wrongfully accused are forms of punishment that are not just unmerited but also profoundly damaging.

For twenty-three agonizing days, my son—an innocent sixteen-year-old—was unlawfully imprisoned in a clear violation of juvenile justice principles and his constitutional rights. Detained without cause, he was subjected to the horrors of state-imposed confinement, a gross abuse of power that directly contradicts the very purpose of juvenile justice: to rehabilitate and protect youth, not to punish or oppress them. Moreover, the Eighth Amendment's prohibition against cruel and unusual punishment was blatantly disregarded. Subjecting a young, innocent boy to twenty-three days of fear, isolation, and trauma—while knowing that he had done nothing

wrong—is a form of psychological cruelty that no child should ever have to endure. The reckless disregard for my son's well-being, combined with the state's indifference to his innocence, underscores how deeply this situation violated his rights.

Juvenile justice systems are designed to protect vulnerable youth and ensure their development in a fair, equitable manner. Instead, Alic was caught in a web of deceit, his treatment entirely antithetical to the ideals of rehabilitation and support. The system designed to safeguard him instead weaponized legal tools to inflict harm.

For twenty-three agonizing days, I endured the crushing weight of fear and helplessness, knowing that my son was unjustly imprisoned while those in positions of authority were in collusion with officials like Heather Frost and Stephanie Danner, conspired to uphold this egregious violation of our rights, knowing full well that Alic was innocent and had committed no wrongdoing.

The treatment meted out to Alic during his detention was inhumane, especially when considering that he was a minor. The psychological toll of being wrongfully accused and forcibly removed from his home can be equated to a form of emotional punishment that is neither warranted nor acceptable under any legal standard.

The failure of the child welfare system to act in Alic's best interests—instead acted with a deliberate indifference to Alic's well-being and safety. The actions of Shenandoah County officials—imposing a false CHINS classification without evidentiary support, failing to conduct a formal hearing, and disregarding my constitutional right to defend my son or myself—constitute clear violations of the Fifth and Fourteenth Amendments. These actions align with the due process violations identified in Santosky v. Kramer, In re L.M., and R.S. v. Indiana Department of Child Services, where courts recognized the state's failure to meet constitutional requirements in parental rights cases.

Stephanie Danner's false testimony to the district court exemplified a profound abuse of authority and a deliberate attempt to mislead the district court. Danner intentionally concealed information that contradicts her narrative, including the fact that Alic had no history of behavioral issues or previous involvement with the juvenile system.

Her actions were part of a broader conspiracy with the Shenandoah County Department of Social Services (SCDSS) to unjustly remove Alic from our home. The decision maliciously placed him in a foster care system that lacked necessity or justification, with no imminent threat present. As a result, I was reduced to a mere visitor in my own child's life, enduring supervised visits under threat and intimidation, needlessly lost eleven months of precious time with my son. This removal lacked compelling state interest and lawful jurisdiction.

Stephanie Danner, SCDSS and the Juvenile Court falsely asserted that I consented to my son being forcibly removed from my custody defied logic and amounted to psychological torture, causing irreparable damage. Alic's removal from our home was akin to an abduction or kidnapping. This unlawful act, executed without hearings, petitions, or evidence of neglect, flagrantly violated the constitutional due process rights regarding parental autonomy. This action

subjected him to fear and uncertainty, abruptly placing him into the foster care system for eleven months. Alic, who was never in danger prior to this, was abruptly removed from our home, creating danger where none existed. Nicholson v. Williams (203 F. Supp. 2d 153, EDNY 2002) illustrates the requirement for a complete investigation before removing children from their homes, emphasizing that governmental actions must be justified by clear and convincing evidence.

The blatant and coordinated actions of Stephanie Danner, the Shenandoah County Department of Social Services (SCDSS), in collusion with the Juvenile Court represent a gross and outrageous abuse of power. The false assertion that I consented to having my son ripped from my custody, subjected to fear and uncertainty, and placed into a foster care system for eleven months is not only absurd, but it was also a form of psychological torture that defied logic and reasoning that caused irreparable damage. Alic was never in danger, yet they forcibly removed him from our home and created danger where there was none and actively contributed to the damage we endured. They deliberately and maliciously placed him into a foster care system that was neither necessary nor justified, there was no imminent danger. There was no compelling state interest. There was no lawful jurisdiction.

These state actors acted with malicious intent. They knew there was no legitimate basis for removing Alic from our home. They knew there was no evidence of instability, harm, or neglect. Yet they proceeded with calculated threats and intimidation, isolating my son and subjected him to emotional trauma that no child should ever endure. This was not about protecting a child and the state's actions were not only unlawful but directly responsible for the danger and irreparable harm inflicted upon my family.

The defendants' conduct constitutes grounds for relief under Federal Rule of Civil Procedure 60(b), particularly sections 60(b)(2) regarding newly discovered evidence and 60(b)(3) concerning fraud or misconduct by an opposing party. .Fraud of this magnitude strikes at the heart of judicial integrity and must be corrected opening the door to federal relief for the constitutional deprivations inflicted on me and my family and constitutes prima facie evidence of fraud upon the district court.

This deliberate abuse of legal procedures subjected my family to prolonged state intervention without probable cause—rendering the actions unconstitutional under the doctrine of malicious prosecution in Albright v. Oliver, 510 U.S. 266 (1994), is instructive here, as it firmly establishes that the use of legal processes for improper purposes—especially with malice and intent to harm—violates the Fourteenth Amendment's substantive due process clause led to significant constitutional violations, including conspiracy and criminal conduct as outlined in 18 U.S.C. §§ 241 and 242.

The dismissal of my case in the District Court relied on false testimony and fabricated evidence presented by officials such as Stephanie Danner, demonstrating a coordinated effort to manipulate the judicial process for their own agenda.

The petition was submitted to the United States District Court for the Western District of Virginia as though it had a proper legal foundation. This act of filing false information in federal

court constitutes fraud upon the court. As outlined in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), fraud upon the court occurs when a party deliberately deceives the court in a manner that disrupts the judicial process.

By concealing this information, they not only denied me the opportunity to contest the fraudulent claim but also prevented the court from seeing the full extent of their misconduct. This manipulated classification became the foundation for the court's unjust dismissal of my case, further perpetuating the legal wrongs already inflicted upon us.

The state's actions in submitting these fraudulent documents to the U.S. District Court were deceptive and cannot stand, and it is imperative that the court recognize the profound injustice caused by these fraudulent actions. The newly discovered facts, deliberate misrepresentation and fraudulent conduct by the Shenandoah County Commonwealth of Virginia and its officials succeeded in persuading the district court to accept the false assertion of jurisdiction, coupled with fraudulent filings that misled both myself and the District Court, resulting in severe manifested injustices to my family. The egregious and systematic abuse and misconduct perpetrated by Shenandoah County officials, whose actions not only violated our constitutional rights but also inflicted profound, ongoing harm upon my family and created fraud upon this Court.

The systematic manipulation of the legal system in collusion between the juvenile court and other state officials cannot be overlooked. The state's deliberate misrepresentations affected the District Court's judgment and concealed the lack of legal grounds for their involvement in my family's life.

By falsely representing my son from the outset the state created a false and defamatory narrative—one that unfairly painted me as an unfit parent incapable of providing proper care and supervision led to me being viewed through the lens of an unfounded "history of neglect or supervision issues," even though no such history exists I was placed in a defensive position, where I have been left to fight alone against the baseless legal status.

Courts have consistently ruled that the state bears the burden of proving parental unfitness or neglect, as affirmed in Lassiter v. Department of Social Services, 452 U.S. 18 (1981). In Lassiter, the Court held that due process requires the state to carry the burden of proof when seeking to interfere with a parent's fundamental rights.

The defendants' actions turned this principle on its head and presented a defamatory and false narrative that unfairly deprived me of my liberty interest to care for and protect my child— fundamental rights that are constitutionally protected. Stanley v. Illinois, 405 U.S. 645 (1972), requires that any challenge to parental rights must be backed by compelling justification and addressed in a proper hearing.

The fraudulent actions in my case deprived me of my ability to protect and nurture my son, constituting an unconstitutional state-sponsored violation of my parental rights.

My assertions are grounded in concrete, irrefutable facts that expose the complete abandonment of the Shenandoah County Commonwealth of Virginia's duty to protect its citizens, and thrives

in an environment where the systemic abuse of procedural due process, overreach of state authority, and the deprivation of parental rights along with the state's narrative goes unchallenged and parental rights are overridden with ease, leaving families like mine vulnerable and disenfranchised. Monroe v. Pape, 365 U.S. 167 (1961). Moore v. Dempsey, 261 U.S. 86 (1923), where the U.S. Supreme Court held that fabricated evidence and misrepresentation violate due process, irreparably corrupt judicial proceedings.

The false CHINS classification was arbitrarily used as a direct intrusion into my family's life, as a tool to remove my son from our home when Stephanie Danner and SCDSS further manipulated the legal system by exploiting my vulnerability, disregarding procedural fairness, and using threats and intimidation to unlawfully remove my son, Alic, from my custody. The failure of the child welfare system to act in Alic's best interests—led to the subsequent unlawfully forced removal of Alic from our home without evidence of imminent harm or consideration for his welfare. The authorities acted with deliberate indifference to our well-being, violating both state and federal laws. Stephanie Danner, Heather Frost and SCDSS and exploited the legal process for their advantage, disregarded established legal standards concerning the removal of children from their homes failing to recognize that the state must demonstrate a compelling interest and substantial evidence of imminent danger before intervening in family matters. By neglecting these critical legal requirements, her testimony illustrates a blatant disregard for rights guaranteed to parents under the Constitution.

This orchestrated act of injustice not only severed the bond between mother and child but also left emotional scars that may never fully heal. The constant worry for my son's safety and well-being consumed me. I was left to navigate a nightmare where the very institutions meant to protect families are the ones perpetrating harm. This is tyranny, the states actions were not just reckless, they were criminal. They violated every constitutional principle designed to protect us from this very kind of state-sponsored terror. The Fourth Amendment's protection against unlawful seizures, the Eighth Amendment's prohibition against cruel and unusual punishment, the Fourteenth Amendment's guarantee of due process—every one of these rights was trampled on as though they meant nothing.

This betrayal of trust, fueled by intimidation and threats, exemplifies the worst of what can occur when those in power abuse their authority. The ramifications of their unlawful actions have reverberated throughout our lives, leaving us to grapple with the profound sense of loss and trauma that ensued from their malicious conspiracy. Our family has been irrevocably altered by these events, underscoring the urgent need for accountability and restitution for the harm inflicted upon us.

Title 18 U.S.C. §§ 241 and 242. This collusion served to deprive us of our rights, all while maintaining the appearance of lawful judicial authority. In Dennis v. United States, 384 U.S. 855 (1966), the Court recognized the dangers of conspiracy between state actors, particularly when it results in the deprivation of constitutional rights. Here, the court's actions reveal an abuse of the legal system that imposed unjust consequences on my family without any lawful basis through the systematic misrepresentation resulted in the infringement of fundamental human rights, impeded my ability to advocate for myself and safeguard my son. Courts have consistently held

that jurisdiction cannot be predicated on fraudulent conduct, as established in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944).

The defendants' actions inflicted profound emotional and psychological trauma on both me and my son, Alic. The psychological toll has been severe. For me, it meant not only the heartache of seeing my child suffer but also the helplessness of being prevented from protecting him or providing the stability that I was fully capable of providing and he needed so desperately. For Alic, it meant months of fear, uncertainty, and isolation, all under the guise of a legal system that is inherently corrupt and unjust. The officials' actions were calculated to intimidate and coerce us, deliberately aiming to cause maximum emotional distress. They shattered the very foundation of our lives and left us destabilized, and they did so with full knowledge of the devastation they were causing

The state's actions not only failed to protect but created danger and actively contributed to the harm inflicted upon Alic caused by its own actions. The Eighth Amendment, prohibiting cruel and unusual punishment. The U.S. Supreme Court has interpreted this amendment to prohibit not only physical punishments that are barbaric or excessive but also actions that impose severe emotional and psychological harm. The psychological damage to Alic, who was branded as a delinquent, and unjustly removed from his home and to me who suffered the pain of being separated from my child for eleven months by use of threat and intimidation was a direct consequence of the state's unconstitutional behavior.

The evidence against us comprises a falsified petition and a fabricated CHINS adjudication sheet, accompanied by retroactively manufactured charges. There were no allegations of harm, neglect, or abuse, nor any credible evidence presented. Notably, no adjudication occurred prior to the petition's filing, preempting any judicial determination or hearing—an egregious breach of procedural fairness and legality. Virginia's Supreme Court precedent, exemplified in United States v. State Corp. Comm'n of Va., 560 S.E.2d 605 (Va. 2002), underscores that actions lacking jurisdiction are void ab initio and cannot justify lawful intervention. Moreover, rulings in Forrester v. White, 484 U.S. 219 (1988), and Mireles v. Waco, 502 U.S. 9 (1991), affirm that judicial immunity does not shield actions beyond a judge's lawful authority. Judge Logan's actions, driven by fabricated claims under § 16.1-241(A)(1), starkly exceed permissible judicial immunity boundaries.

These undisputed facts reveal that this classification was based on a fraudulent petition filed by an attendance official, without any legal or factual basis to support that designation and the petition was accepted without scrutiny by the juvenile court despite lacking lawful adjudication or evidentiary support was in collusion with the Juvenile Court grossly violated the protections guaranteed under the Fifth and Fourteenth Amendments.

Craig v. Boren, 429 U.S. 190 (1976), the Supreme Court emphasized that state classifications must bear a "substantial relationship" to important governmental objectives. Here, the classification of Alic under the CHINS statute bore no rational relationship to any legitimate governmental interest; it was a blatant act of defamation. The state's actions fail to meet even the most basic standards of fairness and legality, let alone the high bar required by strict scrutiny.

The Shenandoah County Commonwealth of Virginia et. al, used this false petition as a tool to impose unwarranted control over my family, trampling our rights in the process and arbitrarily used as a direct intrusion into my family's life, as a tool to remove my son from our home.

This was more than mere recklessness; the actions taken by the state were tyrannical and criminal in nature. The Constitution serves as a bulwark against precisely this kind of state-sponsored oppression, and the violations committed by Shenandoah County officials eviscerated these protections. The First Amendment guarantees the right to petition the government for redress of grievances.

By fabricating charges, engaging in procedural misconduct, and impeding my ability to defend myself and my son, the state effectively stifled my right to seek justice and challenge their unlawful actions. The state's refusal to acknowledge or address the numerous complaints I filed, including those directed to higher authorities like the governor and Virginia Department of Social Services, exemplifies their intentional suppression of my constitutional rights. This deliberate obstruction hindered my ability to participate meaningfully in the legal process.

The Fourth Amendment's protection against unreasonable searches and seizures was grossly violated when my son, Alic, was unlawfully seized from our home without prior notice or a valid emergency order. His removal shortly before midnight, without any legal basis or due process, constitutes an illegal seizure under the Fourth Amendment. Furthermore, the warrantless demands made against me—such as the arbitrary urine sample request—lacked any probable cause and further demonstrated the state's blatant disregard for constitutional protections. The Fifth Amendment guarantees that no person shall be deprived of life, liberty, or property without due process of law.

My son and I were unlawfully imprisoned and separated based on fabricated charges, false CHINS classifications, and arbitrary judicial actions, without any legitimate legal foundation or evidentiary hearing.

The Fourth Amendment states that no person should be subjected to illegal searches or seizures, which includes my wrongful arrest and unlawful imprisonment, as well as Alic's illegal detention and forced removal from our home for 11 distressing months of supervised visitation by use of threat and intimidation inflicted emotional and psychological trauma, deepened by the lack of any lawful basis for the separation continues to cause us to experience significant emotional damage. My family continues to suffer significant emotional damage as a direct result of the defendant's actions, which were taken with reckless disregard for our wellbeing or safety. Wynn v. Wynn, 617 S.E.2d 274 (Va. App. 2005)

The Eighth Amendment's prohibition against cruel and unusual punishment was also transgressed. My son was detained for 23 days, during which the state inflicted emotional and psychological harm on him and our family through unlawful detention and public humiliation. The punitive measures imposed by the state—without justification and in clear defiance of legal standards—amounted to cruel and unusual punishment. This abuse of power, coupled with the emotional trauma caused by our prolonged separation, is precisely what the Eighth Amendment seeks to prevent. Lastly, the Fourteenth Amendment guarantees due process and equal protection

under the law, both of which were flagrantly disregarded. The state's failure to provide a legitimate basis for the CHINS classification, along with the concealment of the false classification from the District court and myself, stripped us of any meaningful opportunity to contest the fraudulent charges. The Fourteenth Amendment's procedural due process protections were completely disregarded when the Juvenile Courtimposed punitive restrictions without evidence or a fair hearing. Additionally, the state's discriminatory actions and its arbitrary exercise of power reflect a violation of the equal protection clause, as we were treated unjustly and without regard for the law's equal application.

the state's actions deprived both Alic and me of our constitutional right to procedural due process, as guaranteed by the Fifth and Fourteenth Amendments. The Constitution demands that before the state exercises power over a family in this manner, notice and an opportunity to contest the action must be given. In this case, no such opportunity was afforded to me or my son. We were left defenseless, while the state wielded illicit control  over my family based on fabricated claims without granting us the fundamental constitutional protections that should have shielded us from such abuse.

The fear, humiliation, and emotional trauma inflicted upon us were immediate, as we faced over twelve months of state persecution, driven by falsehoods and an abuse of judicial authority. Judge Logan's exclusive authority, unchecked by any system of accountability or review, allowed the unlawful persecution of my family, resulting in profound violations of our constitutional rights. These violations, coupled with the abuse of power and malicious prosecution, underscore the severity of the state's misconduct in this case.

By concealing false information in the petition and submitting it to the United States Court for the Western District of Virginia as if it were legally valid, Shenandoah County and its officials knowingly and deliberately misled the District Court to cover up their wrongful actions.

Judge Chad Logan, as the sole authority with jurisdiction over juvenile matters in Shenandoah County, wielded his power in a way that abused the judicial system. His rulings, which were shielded from appeal due to the unique structure of the Shenandoah county juvenile court jurisdiction, effectively trapped my family in a cycle of injustice. By preventing the opportunity to challenge or appeal his decisions, the system denied us our fundamental rights to a fair process.

The fraudulent petition filed by Shenandoah County officials was presented to the court under false pretenses of legitimacy. The state's abuse of the CHINS child welfare system was under false grounds and without legal justification or proper judicial review, constitutes a prima facie procedural violation of our right to due process and disregarded our rights and subjected us to danger that caused irreparable damage by its actions. Every action taken against Alic and me, including his removal from our home and both of our detentions, was based on a fraudulent petition that lacked any legal foundation. Shenandoah County's officials violated due process, acted outside their legal authority, and interfered with my parental rights.

It is impossible to convey in words the depth of the emotional trauma we have endured. My son, Alic, was ripped from our home at the age of 16—wrongfully detained for 23 agonizing days

under a fraudulent Child in Need of Supervision (CHINS) classification, while I, his mother, was falsely imprisoned for 49 days, cut off from my child and left to fight an overwhelming tide of deceit and abuse. Our lives, our dignity, and our sense of security have been shattered.

A reasonable government official would have known that without such evidence, any action asserting jurisdiction or removing a child from their home would be unconstitutional and unlawful. Harlow v. Fitzgerald, 457 U.S. 800 (1982), the Supreme Court held that officials are protected by qualified immunity only if their conduct does not violate clearly established statutory or constitutional rights. The deliberate and malicious actions of the officials involved subjected both Alic and me to extreme psychological trauma. The forced unlawful removal, unlawful imprisonments, and supervised visitations under false pretenses caused severe emotional distress. The state's egregious conduct inflicted pain and suffering far beyond what is considered lawful or reasonable, meeting the threshold for intentional infliction of emotional distress.

The actions taken by Shenandoah County officials are not isolated errors—they reflect a deliberate and ongoing pattern of misconduct that has violated our civil rights under 42 U.S.C. § 1983. These officials, entrusted with upholding the law, instead manipulated court procedures, fabricated documents, and concealed the truth, violating federal law in the process they were intentional acts of deception, designed to mislead. The state's actions were not only unlawful but directly responsible for the danger and irreparable harm inflicted upon my family.

Although the District Court dismissed this case on July 7, 2022, the underlying fraud remains unresolved. The misrepresentations made to the court, coupled with the fraudulent filing, resulted in a dismissal that did not address the ongoing harm inflicted on my family. In this case, the fraudulent classification of my son as a CHINS continues to impact our lives long after the initial filing, meaning the violation of our constitutional rights persists. This ongoing harm necessitates that the court address the fraud that has been systematically perpetrated by Shenandoah County and its officials.

The juvenile court's submission of the false petition to the District Court, cloaked in the guise of legitimate evidence, was a calculated deceit. Judicial immunity does not extend beyond lawful jurisdiction (Forrester v. White, 484 U.S. 219 (1988); Mireles v. Waco, 502 U.S. 9 (1991)). Judge Logan's actions fell outside judicial immunity protections, with juvenile and circuit courts imposing judgments and unlawful imprisonment where no jurisdiction existed. Judge Logan and Judge Black's actions lacked jurisdictional legitimacy, deviating starkly from justice and legality principles.

This ordeal has transformed our lives into a constant struggle for normalcy, a daily fight to reclaim our rights, our peace, and our family. I urge this Court to recognize the severity of this situation and take immediate action to correct these injustices. Our family deserves to be whole again, free from the oppressive shadow of a system that has failed us. We need justice—not just for ourselves, but to ensure that no other family endures the torment we have faced. The time for action is now; our lives depend on it.

For over four years, my family has endured a relentless nightmare, one initiated by the malicious and fraudulent actions of Shenandoah County officials. What began on September 22, 2020, with the unjust and unfounded classification of my son, Alic, as a Child in Need of Supervision (CHINS), has shattered the very foundation of our lives. This orchestrated attack not only tore my family apart but has left scars that continue to fester, impacting our emotional well-being, financial stability, and sense of security.

The moment the court intervened, we were thrust into a world of fear and uncertainty. I found myself battling an impenetrable system that turned its back on us, withholding the truth while advancing a narrative built on lies. I fought tirelessly through state channels, desperately seeking justice and protection for my son. Each day, I faced the agonizing reality that my rights as a mother were being stripped away, leaving me feeling helpless and alone.

The trauma of this experience has been profound. The emotional toll on my family is immeasurable. We have been subjected to public scrutiny, relentless anxiety, and a constant fear of losing everything that matters to us. My relationship with my son has been strained by the state's unjust actions, and the bonds of trust that once held our family together have been tested to their limits. The very essence of our lives has been undermined, as we grapple with the fallout of state-sponsored harassment and the stigma of being falsely labeled as unfit.

This isn't just about my family; it's about every family facing unjust state intervention without recourse. The actions taken against us reflect a systemic failure that can devastate lives and tear apart families. We are not statistics; we are human beings with dreams, hopes, and rights that should be protected. I urge you to recognize the urgency of this matter. We seek not just justice for ourselves but also to ensure that no other family has to endure this suffering.

We need immediate action to rectify these wrongs, to restore our dignity, and to reclaim our lives from the grasp of a system that has failed us. The pain we have experienced must not be in vain. It is imperative that the court acknowledges the injustices we have faced and acts decisively to prevent future violations of our constitutional rights. Together, let us stand against this tyranny and fight for a system that truly serves and protects families, ensuring that every parent has the right to defend their child and every child has the right to be safe in their home.

Given the significant fraud perpetrated by the Shenandoah County Juvenile Court and the impact this fraud had on the district court's rulings. The presence of compelling new evidence necessitates a reassessment of past judgments. Such findings reveal a tangible false foundation upon which the original dismissal was inherently flawed. Schlup v. Delo, 513 U.S. 298 (1995).

The resulting judgment was not a product of a fair and informed review of the facts but rather a manifestation of the defendants' deceitful manipulation. laid by these officials, has compounded our suffering, denying us the protection and fairness that the legal system is supposed to provide. In light of these facts, I assert that the district court's dismissal was a miscarriage of justice.

WHEREFORE, I Megan Whittington, plaintiff, pro se, respectfully requests that this Honorable Court grant the following relief:

Immediate Injunctive Relief: Issue a temporary restraining order and/or preliminary injunction preventing any further actions by Shenandoah County officials that infringe upon the rights of the Plaintiff and her family, particularly concerning the CHINS classification, until a full hearing can be held on the merits of this case.

Compensatory Damages: Award compensatory damages to Plaintiff for the emotional distress, mental anguish, and economic harm suffered as a result of the malicious prosecution initiated by Shenandoah County officials, amounting to at least [insert specific amount] as just compensation for the pain and suffering endured over the past four years.

Punitive Damages: Award punitive damages against Shenandoah County officials to deter them and others from engaging in similar misconduct in the future, given the malicious and fraudulent nature of their actions that have inflicted severe emotional and psychological harm on Plaintiff and her family.

Declaratory Relief: Issue a declaratory judgment stating that the actions of Shenandoah County officials, including the fraudulent CHINS classification and subsequent prosecution, were unconstitutional and violated Plaintiff's rights under the Fifth and Fourteenth Amendments.

Restoration of Parental Rights: Order the immediate restoration of all parental rights that were unlawfully stripped from Plaintiff as a result of the malicious prosecution and fraudulent actions of state officials.

Costs and Attorney's Fees: Award Plaintiff the costs of this action, including reasonable attorney's fees, as permitted under 42 U.S.C. § 1988.

Expedited Hearing: Grant an expedited hearing on this matter given the protracted nature of the proceedings and the ongoing harm suffered by Plaintiff and her family since the initial actions began in September 2020.

Any Other Relief: Grant such other and further relief as this Court deems just and proper in order to rectify the injustices endured by Plaintiff and her family.

I, Megan Whittington assert that these requests are necessary to address the ongoing and uncorrected wrongs inflicted upon my family over the past four years. The urgency of this matter requires immediate action to prevent further harm and restore our family's dignity.

Respectfully submitted,

Megan Whittington

120 Hottel Road

Woodstock, Virginia 22664

10/15/2024

Megan Whittington
120 Hotel Road
Woodstock, Virginia 22664

Retail


UNITED STATES
POSTAL SERVICE®


22802

RDC 99

U.S. POSTAGE PAID
FCM LG ENV
WOODSTOCK, VA
OCT 15, 2024

$2.59

S2324P502596-94

US Court for the Western District
of Virginia
116 N. Main Street
Room 314
Harrisonburg, Virginia
22802